FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 03 2011

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**ELAINE THOMPSON, INDIVIDUALLY AND**                                **PLAINTIFFS**
**AS PERSONAL REPRESENTATIVE OF THE ESTATE**
**OF JOHNNY DALE THOMPSON, JR., DECEASED**

**v.**                    Case No. 4 · 1 1 - C V - 0 3 7 9 *BSM*

This case assigned to District Judge *Miller*
and to Magistrate Judge *Kearney*

**SALINE COUNTY SHERIFF PHIL MASK,** INDIVIDUALLY AND
AS FORMER SHERIFF OF SALINE COUNTY, ARKANSAS;
**SHERIFF BRUCE PENNINGTON,** INDIVIDUALLY AND
AS SUCCESSOR AND CURRENT SHERIFF OF SALINE COUNTY, ARKANSAS;
**HUGH GENTRY,** INDIVIDUALLY AND AS JAIL ADMINISTRATOR
FOR ADULT DETENTION FOR SALINE COUNTY, ARKANSAS;
**RAY PENNINGTON,** INDIVIDUALLY AND AS SUCCESSOR
JAIL ADMINISTRATOR FOR ADULT DETENTION FOR
SALINE COUNTY, ARKANSAS;
**TAMMY PENDERGRASS,** INDIVIDUALLY AND AS CORPORAL FOR THE
SALINE COUNTY SHERIFF'S DEPARTMENT;
**MIKE FROST**, INDIVIDUALLY AND AS A LIEUTENANT FOR SALINE
COUNTY SHERIFF'S DEPARTMENT;
**ED BUSH,** INDIVIDUALLY AND AS SERGEANT FOR SALINE COUNTY
SHERIFF'S DEPARTMENT;
**MORSTINE WILLOUGHBY**, INDIVIDUALLY AND AS A
SERGEANT OF THE SALINE COUNTY SHERIFF'S DEPARTMENT;
**ULENZEN C. KING,** INDIVIDUALLY AND AS A FORMER
OFFICER FOR THE SALINE COUNTY DETENTION CENTER;
**STEPHEN FURR,** INDIVIDUALLY AND AS AN DEPUTY OF THE
SALINE COUNTY SHERIFF'S DEPARTMENT;
**JAMES HALL,** INDIVIDUALLY AND AS AN DEPUTY OF THE SALINE
COUNTY SHERIFF'S DEPARTMENT; **and**
**SALINE COUNTY ARKANSAS**
**d/ba/ SALINE COUNTY DETENTION CENTER**                    **DEFENDANTS**

## COMPLAINT

COMES NOW the Plaintiff, Elaine Thompson, individually and as personal

representative of the estate of her son, Johnny Dale Thompson, Jr., deceased; by and through

their attorneys, Satterfield Law Firm, PLC, and for their Complaint, state:

1

## I. INTRODUCTION

1.       This action for damages is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. §

1988, the Fifth and Fourteenth Amendments to the United States Constitution, the Arkansas

Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101 *et seq*., Arkansas Code Ann. § 16-62-

101 and 102, to recover money damages, both compensatory and punitive, alleging violations of

the civil rights of Johnny Dale Thompson, Jr., deceased; by the named Defendants as well as for

the wrongful death of Johnny Dale Thompson, Jr.

2.       Plaintiff herein alleges that the Defendants disregarded the substantial risk to

detainees and Thompson's life by intentionally refusing and intentionally failing to take

reasonable measures to deal with detainees and Thompson's problem, when they knew, or

should have known, of:

a. Thompson's serious need for immediate medical treatment for obvious signs and symptoms
of acute intoxication and progressive respiratory failure, while Thompson was in the custody of
the Saline County Sheriff's Department as a misdemeanor detainee being held in the Saline
County Detention Center ("SCDC") located in Saline County, Arkansas. Thompson's death was
proximately caused by Defendants' deliberate indifference to his obvious serious medical
condition and intentional failure to assist Thompson in receiving medical treatment for an
accidental, prescription medication intoxication;

b. SCDC's past and existing failures to remedy a pattern of systemic deficiencies in staffing,
staff training in diagnostic skills, staff life-saving training, emergency treatment, failures to have
qualified personnel capable of making a reasonable assessment of a medical emergency; in
failure to document and maintain accurate, available medical and medication records on present
and past detainees like Thompson who had previously experienced medical events at SCDC, and
failure to establish adequate written procedures establishing the duties and responsibilities
related to medical issues, all of which constitutes deliberate indifference to detainees medical
needs, including Thompson; and

c. SCDC's and Saline County's systemic deficiencies in medical issues, through actions or
omissions of the Saline County Quorum Court, the sheriff, and other county officials' intentional
acts, resulting in the continuation of systemic deficiencies of a constitutional significance in the
administration of medical services, caused by or known to all the Defendants. These intentional
acts or omissions of the Defendants include the discontinuation of the employment the past
physician and registered nurse, who formerly staffed the SCDC medical facility, and the current

2

pattern of intentional utilization of untrained, unsupervised personnel, unsatisfactory record-keeping, and inadequate emergency procedures in violation of the "Arkansas Jail Standards," promulgated by the State of Arkansas, and the Saline County Inmate Handbook. It has been widely, publicly reported there have now been four (4) detainee deaths, with Thompson being the third (3rd), and these conditions require immediate corrective action to avoid further imminent, irreparable harm to detainees. (See **Exhibit "A"** - **attached newspaper articles**).

## II.

## PARTIES AND JURISDICTION

3.      Plaintiff re-alleges and incorporates each and every allegation set forth in paragraphs 1 through 2 as if fully set forth herein.

4.      The Plaintiff, Elaine Thompson, a citizen and resident of Columbia County, Arkansas, is the mother of and has been duly appointed by Order of the Saline County, Arkansas, Probate Division, on June 1, 2009, No. 2009-229-4, as the personal representative of the estate of her son, Johnny Dale Thompson, Jr., who was at all relevant times a resident of Saline County, Arkansas. Plaintiff brings this action both in her individual capacity and as the personal representative on behalf of the Estate of Johnny Dale Thompson, Jr.

5.      **Defendant Phillip Mask** (herein referred to as "Mask"), was at all relevant times alleged herein, the duly elected Sheriff of Saline County, Arkansas. In that capacity, and pursuant to Ark. Code Ann. §§ 12-41-502, 12-41-503, 12-41-507, and 12-26-101 *et seq.*, he was responsible for the operation of the Saline County Detention Center (hereafter "SCDC"), including establishing and enforcing, failing to establish, or failing to enforce the policies, practices, procedures and regulations for the conduct of the Saline County Sheriff's Department, SCSD and its employees.

6.      Mask was at all relevant times herein alleged, responsible for the hiring, training, supervision, discipline, and control of all members of the Saline County Sheriff's Department

and SCDC. Mask was the commanding officer of the deputies and jail personnel named herein as individual Defendants and all other Sheriff's Office employees. Mask was constitutionally and statutorily responsible for the operation, practices, and totality of conditions of the SCDC. Mask, at all times herein, was acting in such capacity as the chief policy maker, agent, servant, and employee of Saline County, Arkansas. He is sued in his individual and official capacities.

7.    Mask, as Sheriff, had the constitutional and statutory responsibility for the conditions and practices of the SCDC, and was responsible for maintaining the Detention Center in conformity with Constitutional requirements. Mask, as the custodian and policy maker of the SCDC, was also responsible for those institutional patterns of action, or lack of action, by any and all employees of the Saline County Sheriff's Department, which results in the creation of, or tacit approval of, "ad hoc" policies that violate the constitutional rights of the pretrial detainees housed in the SCDC. Mask is responsible for and charged with furnishing and paying for the medical aid for all persons detained in the SCDC; and responsible for the action or lack of action which results in a policy or "ad hoc" policy of failing to assure the reasonable safety or medical care of the inmates and detainees (hereafter "Detainees") of the SCDC.

8.    **Defendant Bruce Pennington** (herein referred to as "Pennington"), succeeded Defendant Mask as the duly elected Sheriff of Saline County, Arkansas, in 2009. In that capacity, and pursuant to Ark. Code Ann. § 16-62-103 (sheriff successor statute), 12-41-502, 12-41-503, 12-41-507, and 12-26-101 et seq., he was and is responsible for the operation of the Saline County Detention Center (hereafter "SCDC"), including establishing and enforcing, failing to establish, or failing to enforce the policies, practices, procedures and regulations for the conduct of the Saline County Sheriff's Department, SCSD and its employees.

4

9.      Defendant Pennington is currently responsible for the hiring, training, supervision, discipline, and control of all members of the Saline County Sheriff's Department and SCDC. Pennington is the commanding officer of the deputies and jail personnel named herein as individual Defendants and all other Sheriff's Office employees. Pennington is constitutionally and statutorily responsible for the operation, practices, and totality of conditions of the SCDC. Pennington is acting in such capacity as the chief policy maker, agent, servant, and employee of Saline County, Arkansas. He is sued in his individual and official capacities.

10.     Pennington, as current Saline County Sheriff, has the constitutional and statutory responsibility for the conditions and practices of the SCDC, and is responsible for maintaining the Detention Center in conformity with Constitutional requirements. Pennington, as the custodian and policy maker of the SCDC, is also responsible for those institutional patterns of action, or lack of action, by any and all employees of the Saline County Sheriff's Department, which results in the creation of, or tacit approval of, "ad hoc" policies that violate the constitutional rights of the pretrial detainees housed in the SCDC. Pennington is responsible for and charged with furnishing and paying for the medical aid for all persons detained in the SCDC; and responsible for the action or lack of action which results in a policy or "ad hoc" policy of failing to assure the reasonable safety or medical care of the inmates and detainees (hereafter "Detainees") of the SCDC.

11.     **Defendant Saline County**, is a County within the state of Arkansas, as defined by Ark. Code Ann. §14-14-102; the legislative body of the County is the Saline County Quorum Court, pursuant to the Arkansas Constitution, Amendment 55, and Ark. Code Ann. §14-14-801 *et. seq*. Pursuant to Arkansas Constitution, Amendment 55(4), the Saline County Quorum Court has the power to fix the number and compensation of deputies and county employees. All of the

5

acts of the county's agents and employees complained of herein were under the color of state law within the meaning of 42 U.S.C Section 1983.

12. **Defendant Hugh Gentry** was and upon reasonable belief is an employee of the Saline County Sheriff's Department, and upon reasonable belief was the Jail Administrator for the SCDC, at the time of Mr. Thompson's death. In that capacity, and pursuant to Ark. Code Ann. §§ 12-41-502, 12-41-503, 12-41-507, and 12-26-101 et seq., Defendant Gentry was also constitutionally and statutorily responsible for the training, supervision, discipline, and control of all subordinate jailers, as well as the operation, practices, and totality of conditions of the Detention Center. Defendant Gentry had statutory responsibility also for ensuring that the SCDC conforms to the requirement of Arkansas law, minimum jail standards, and the laws and Constitutions of the United States and Arkansas. In addition, Defendant Gentry was responsible for the establishment of policies, procedures, and guidelines for the arrest, jailing, medical care and safekeeping of detainees housed in the SCDC. At all times herein, Defendant Gentry was acting in such a capacity as an agent, servant, and employee of Defendant Mask and Saline County, Arkansas, a subdivision of the State of Arkansas. He is sued individually and in his official capacity.

13. **Defendant Lt. Mike Frost** was and upon reasonable belief is a supervisory Officer of the Saline County Sheriff's Office or SCDC, charged with the responsibility of ensuring that Sheriff's employees obey the rules and regulations of the Saline County Sheriff's Department, and the applicable laws, minimum jail standards, and Constitutions of the State of Arkansas and the United States. This Defendant is also responsible for implementing and following such policies, procedures, and guidelines for the arrest, jailing, medical care and safekeeping of the detainees housed in the SCDC. This Defendant also was under a duty not to

6

harm Johnny Dale Thompson, Jr., and to intervene promptly to protect his medical needs, which duty he violated through policies, customs and procedures amounting to inaction in the face of an obvious medical emergency.

14.    **Defendant Sgt. Ed Bush, Defendant Sgt. Morstine Willoughby, and Defendant Tammy Pendergrass** were, and upon reasonable belief are, the Saline County Sheriff's Office or SCDC employees charged with the responsibility for ensuring that Sheriff's employees obey the rules and regulations of the Saline County Sheriff's Department, and the applicable laws, minimum jail standards, and Constitutions of the State of Arkansas and the United States. These Defendants are also responsible for implementing and following such policies, procedures, and guidelines for the arrest, jailing, medical care and safekeeping of the detainees housed in the SCDC. These Defendants also were under a duty not to harm Johnny Dale Thompson, Jr., and to intervene promptly to protect his medical needs, which duty they violated through policies, customs and procedures amounting to inaction in the face of an obvious medical emergency.

15.    **Officer Ulenzen C. King** (who was later fired on 8/27/2010 for using excessive force on a pregnant inmate)**, Deputy James Hall, and Deputy Stephen Furr** were, at the time of Thompson's death, the Saline County Sheriff's Office or SCDC employees charged with the responsibility for obeying the rules and regulations of the Saline County Sheriff's Department, and the applicable laws, minimum jail standards, and Constitutions of the State of Arkansas and the United States. These officers are also responsible for following such practices, procedures and guidelines for the arrest, jailing, medical care and safekeeping of the detainees housed in the SCDC. These officers also were under a duty not to harm Johnny Dale Thompson, Jr., and to intervene promptly to protect his medical needs, which duty they violated through policies,

7

customs and procedures amounting to inaction in the face of an obvious medical emergency. Officers King, Furr, and Hall knew of the obvious serious medical need of Thompson, and were deliberately indifferent in their response to the perceived risk.

16.     It was the responsibility of the Sheriff and Jail Administrator to ensure that the policies of the Saline County Sheriff's Department and the SCDC are followed. It is Defendants' responsibility to ensure that detainees have access to medical care, as well as, protect the detainee's procedural and substantive due process rights.

17.     The above named Defendants were all aware, prior to the acts and incidents that are the subject of this Complaint, of the dangerous systematic deficiencies in medical services and conditions existing in the SCDC. The Defendants were aware on December 18, 2008, that the Defendant was at risk of serious harm, and that he was being denied his substantive and procedural due process rights.

18.     Defendants were further aware, prior to the incidents recited herein; that the SCDC was systematically unsafe and its staff was ill-trained and ill supervised and, under the totality of the circumstances, was in violation of constitutionally acceptable standards.

19.     Defendants, at all times relevant, by their actions and failures to act as described in this Complaint were acting under color of law and pursuant to their authority as employees of the Saline County Sheriff's Department and SCDC, and in conformance with the established policies and customs of the named Defendants. These Defendants were aware of, and were deliberately indifferent to, the failures of classification, the lack of training, the lack of supervision or the lack of medical care; such lack of which would result in injuries to and death of detainees, including Thompson. Defendants are directly responsible for their deliberate indifference to the violation of Thompson's constitutional rights and of his subsequent death.

20.     This action is brought pursuant to Title 42 U.S.C. § 1983 and 42 U.S.C. § 1988

and the Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution and the laws of

Arkansas, specifically the Wrongful Death Act and the Arkansas Civil Rights Act. This Court

has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. § 1343, because the

action involves a deprivation of civil rights arising under the Constitution and this court has

supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

21.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because the acts complained of

occurred in Saline County, Arkansas, which is located in the Eastern District and Western

Division of Arkansas.

### III.

### FACTS

22.     Plaintiff re-alleges and incorporates each and every allegation set forth in

paragraphs 1 through 21 as if fully set forth herein.

23.     In October and November, 2008, Johnny Thompson, Jr. was incarcerated in the

Saline County Detention Center, to satisfy all fines and charges pending against Thompson in

Saline County, and was released after satisfying his sentence on or about November 18, 2008.

24.     Thompson suffered a seizure and was injured during a fall while incarcerated in

the SCDC during October and November, 2008. The SCDC personnel were not only aware of

Thompson's seizure disorder, but was also aware of the prescription medications Thompson was

taking to treat the disorder, as well as other medications Thompson was prescribed.

25.     On or about the 18th day of December, 2008, at approximately 6:30 p.m.,

Deputies Stephen Furr and James Hall, of the Saline County Sheriff's Department, initiated a

9

traffic stop for a broken tail light on a vehicle in which Johnny Dale Thompson, Jr. was riding as a passenger in the back seat of the stopped vehicle.

26.    That Deputy Stephen Furr requested Thompson's identification, entered Thomson's information in the Arkansas Crime Information Center (ACIC) database, alleged that the database reflected that Thompson had outstanding warrants for misdemeanor charges, and placed Thompson under arrest for a failure to appear misdemeanor warrant from Saline County, warrant number WS-2008-2612. However, upon information and belief, this was not a valid outstanding warrant from Saline County in the database, as the database had not been updated to reflect that Thompson had satisfied his sentence for the misdemeanor charges by his prior incarceration in the SCDC in October and November, 2008.

27.    That during a pat down of Thompson, Defendants Furr and Hall found a completely empty prescription bottle for Alprazolam ("Xanax"), a medicine prescribed for panic and anxiety, in Thompson's pocket. The prescription label on the bottle reflected that the prescription was issued to Thompson on December 15, 2008, two (2) days prior to the arrest, and was for sixty (60) pills. Deputy Furr did not administer any tests to Thompson to check for drug or alcohol intoxication, nor did Deputy Furr or Hall transport Thompson to a medical facility, even though Mr. Thompson showed obvious signs of intoxication.

28.    That while Mr. Thompson was being transported to SCDC by Defendant Furr, Deputy Furr witnessed Thompson exhibiting obvious signs of intoxication, as Thompson was falling asleep in the back of the patrol car. After arriving at the SCDC, Thompson was awoken by Defendant Furr who witnessed that Mr. Thompson was slurring his speech, and was lethargic and sleepy. That Defendant Furr asked Mr. Thompson whether he had taken any of his medication and Furr noted that Mr. Thompson said he had taken medication.

10

29.     That at approximately 6:59 p.m., Defendant Furr turned Mr. Thompson over to the SCDC, to be booked on the misdemeanor warrant charges of failure to appear, believed to be for failure to pay fines on past misdemeanors which he had paid by time served by his prior jail time in SCDC.

30.     That Mr. Thompson was placed alone in holding cell number one in SCDC awaiting the booking procedure and was removed from the cell by Correctional Officer Ulenzen King for booking at approximately 7:20 p.m.

31.     That upon Mr. Thompson's request and based on his obvious physical symptoms of a medical emergency, including but not limited to lethargy, unconsciousness, and slurring of speech, Defendant King had to provide Mr. Thompson a chair to sit in during the booking procedure, because Mr. Thompson was unable to stand.

32.     That during the booking process, Defendant King continued to observe that Mr. Thompson's physical condition was deteriorating, evidencing an obvious need for immediate medical assessment and intervention, and King attempted to ask Mr. Thompson a few questions on the jail's medical intact form. In response, Mr. Thompson was obviously ill but stated he had taken Dilantin, an anti-seizure prescription medicine, but he didn't know how many he had taken.

33.     That King continued to observe Mr. Thompson's physical deterioration, noting that Mr. Thompson was unable to sign any of his book-in paperwork or medical questionnaire because he appeared to be too intoxicated, as evidenced by his deteriorating physical state. King describes, and a video evidences, that Thompson was extremely lethargic to the point of falling in and out of consciousness and sliding out of the chair during the booking process. That during

11

the booking process Defendant King repeatedly slapped the counter of the booking desk to try to regain Mr. Thompson's attention and consciousness due to Mr. Thompson's condition.

34.     That after completing the booking procedure, instead of immediately providing the obvious, necessary medical intervention for this serious medical condition, Defendant King placed Mr. Thompson back in holding cell number one, alone, in the SCDC and closed the door at approximately 7:40 p.m.

35.     That although the Defendants were aware of Mr. Thompson's deteriorating physical state and obviously serious medical condition when he was placed in cell number one after booking, they ignored and were indifferent to this obviously serious acute drug intoxication, and none of the staff of the SCDC intervened at any time to administer medical treatment, CPR, or get medical help.

36.     That upon reasonable belief, Johnny Dale Thompson, Jr., called out for help saying he needed to go somewhere, and other inmates also told jailers to get medical help, but they did not receive any response. Thompson subsequently lost consciousness while in SCDC holding cell number one, alone, and unmonitored and suffered complete respiratory failure due to a lack of necessary medical intervention.

37.     That at approximately 8:50 p.m., December 18, 2008, Officer King and Bauxite Police Officer Michael Turner, entered Thompson's holding cell to allegedly serve Thompson with an arrest warrant from the City of Bauxite, and they discovered Thompson unresponsive, cold to the touch, and pale. Deputy Hall also entered the cell and observed Thompson's unresponsiveness and lack of breathing. That after discovering Thompson, Officer King and Deputy Hall called for Sergeant Ed Bush, who was in the SCDC radio room, to assist, instead of immediately calling for or providing medical intervention.

12

38. That Sergeant Bush entered the cell and found that Thompson's arm was cold to the touch and Officer Hall and Sergeant Bush then rolled Thompson on his back and observed that his face was pale and he was not breathing.

39. That after manually determining no vital signs, Sergeant Bush then asked the radio room to call for an ambulance, since Saline County and the Saline County Sheriff's Office had previously decided to utilize untrained, nonmedical staff at SCDC, and to use the Saline Memorial Hospital Emergency Room as the jails only medical provider for the average of 180 detainees normally housed at SCDC at the time of Mr. Thompson's death.

40. That the SCDC staff mentioned herein, including King, Hall, and Bush, did not at any point attempt to administer CPR on Thompson or to provide any medical treatment, although it was obvious that medical intervention was necessary due to the Thompson's unresponsive physical state. Corporal Tammy Pendergrass, who was present at the SCDC during Mr. Thompson's death, was notified of Mr. Thompson's condition by other SCDC staff and witnessed Mr. Thompson unresponsive in cell number one.

41. That the Defendants herein never delivered CPR to the unresponsive Thompson, although they were aware of Thompson's obvious medical distress from the moment he was brought to the SCDC, placed in a cell alone and unmonitored, and found unresponsive and without vital signs.

42. That Thompson was transported to Saline Memorial Hospital where he was pronounced dead in the emergency room, at approximately 9:30 p.m. The medical examiner determined that Thompson died from a depressed central nervous system due to accidental acute multiple prescription medication intoxication, from Hydrocodone, (at a toxic level), Xanax (at a therapeutic level), Methadone (at a therapeutic level), and Meprobamate (low level).

13

43.    That Thompson's injuries and ultimate death, as set forth *infra*, were proximate and direct result of the Saline County, Arkansas policies, customs, and failures in training and care, which amount to deliberate indifference, and a violation of Thompson's constitutionally protected rights.

44.    That the conditions of the SCDC, and the actions and failures to act of the Defendants, created a dangerous condition in SCDC, which resulted in a denial of medical care to Thompson who was obviously in need of immediate emergency attention, intervention and transfer which amounts to deliberate indifference to an objectively serious medical need, due to Saline County's failure to remedy systemic deficiencies in medical services. Such conditions violated Thompson's rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1988, the Fifth and Fourteenth Amendments to the United States Constitution, the Arkansas Civil Rights Act of 1993, and Ark. Code Ann. § 16-123-101 *et seq*.,

45.    That the actions and inactions of the Defendants, as set forth infra, caused the Wrongful Death of Johnny Dale Thompson, Jr., pursuant to Arkansas Code Ann. § 16-62-101 and 102.

46.    Had the constitutional violations alleged herein not taken place, a reasonably trained medical staff would have been present at the SCDC to provide treatment for Mr. Thompson, or Mr. Thompson would have been immediately transferred to a hospital, either by the arresting agency or by SCDC employees, and he would have completely recovered from his accidental overdose of prescription medication on December 18, 2008.

14

## VI.

## COUNT 1. VIOLATION 42 USC § 1983

47.     Plaintiff re-alleges and incorporates each and every allegation set forth in paragraphs 1 through 46 as if fully set forth herein.

48.     Johnny Dale Thompson, Jr., was in serious and critical need for immediate medical treatment for a life-threatening accidental overdose of prescription medications on December 28, 2008.

49.     Defendants herein were aware of Thompson's serious need for immediate medical treatment for a life-threatening overdose of prescription medications on December 28, 2008.

50.     Defendants, with deliberate indifference, failed to respond to obvious serious medical emergencies and failed to provide the medical care or direct that the medical care be provided within a reasonable time.

51.     As a direct result of the Defendants' deliberate indifference, Thompson died and the Plaintiff herein, in her individual capacity and as personal representative of the estate of Johnny Dale Thompson, Jr. suffered damages.

52.     Defendants herein were acting under color of state law during the acts complained of herein, in concert and in a conspiracy denying constitutionally protected rights.

## "SYSTEMATIC DEFICIENCIES IN SCDC PERSONNEL, TRAINING, MEDICAL SERVICES, MEDICAL ASSESSMENT"

53.     Plaintiff re-alleges and incorporates each and every allegation set forth in paragraphs 1 through 52 as if fully set forth herein.

54.     That in Saline County, Arkansas, there is a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entities and employees.

15

55.     That there is deliberate indifference to, or tacit authorization of, such conduct by the Saline County, Arkansas, policymaking; officials after notice to the officials of that misconduct.

56.     That Thompson's death was proximately and actually caused by Saline County's failure to remedy systemic deficiencies in medical services for the SCDC, a custom that was the moving force behind this constitutional violation.

57.     That the Saline County official policy was, and remains, one of deliberate indifference and/or misconduct was so pervasive among non-policymaking employees of the municipality as to constitute a pattern, custom, or usage with the force of law, in a conspiracy to deny constitutionally protected rights.

58.     That due to the deliberate indifference of the policy makers of Saline County, Arkansas, the SCDC did not employ a physician, a jail medical director, or a nurse either on site or on call at the SCDC at the time of Thompson's death, and employees of the SCDC who did not receive sufficient medical training provided medical assessments of detainees and inmates, constituting a systematic deficiency in the medical policy of the SCDC.

59.     That due to the decision of the Saline County Quorum Court, the sole medical care provider of for SCDC inmates and detainees at the time of Thompson's death was the emergency room at Saline Memorial Hospital.

60.     That prior to Thompson's death, [which was the third (3rd) death in 2008 of now four (4) deaths since the most recent death on April 13th, 2011]; the Saline County Quorum Court and a Sheriff's Office representative met discussed the known dangers of failing to provide any medical staff on premises at the SCDC. The Quorum Court meeting took place on or about August 27th, 2008, and the Saline County Quorum Court decided that the SCDC medical

director, Marvin Kirk, M.D.; would be discharged after serving for only three (3) months,

because the onsite SCDC registered nurse quit in June 2008. The Saline County Quorum Court

voted not to rehire any medical staff for the jail and intentionally redirected the $13,600.00

balance of the earmarked funds in the SCDC medical budget be spent on vehicle expenses

instead of the medical care purposes for which it was collected and allocated.

     61.     That the meeting of the Saline County Quorum Court on or about August 27,

2008, was attended by the Saline County Attorney Jonathan Greer ("Greer"); Saline County

Sheriff's Captain Scotty Courtney ("Courtney"); and County Judge Lanny Fite ("Fite"). The

issue medical care at SCDC was discussed and the following attendees stated:

a. Judge Fite stated that the decision to terminate the medical doctor's contract as medical
director of the SCDC was without any input from then Sheriff Phil Mask, since a new sheriff
administration was coming in and the county should let the new sheriff make decisions related to
the medical staff;

b. Captain Courtney discussed how the SCDC would like a nurse and a doctor "right now"
because "that would alleviate distress on jailers and they could concentrate on inmates, what
their hired to do and not the medical side, which they are not trained for. We're back to the
where anytime anybody needs medical attention; we have to take them to the emergency room or
doctor. The emergency room is our doctor. Jailers have to pass out meds until we get these two
positions replaced."

c. Justice of the Peace J.R. Walters of Alexander, co-chairman of the Jail Committee, remarked
that it would be less expensive to not have any future medical personnel at the jail, that he knew
that the county cannot refuse inmates medical care, and that the county also knew that the SCDC
did not have a qualified jail administrator; and

d. County Attorney Greer, in response to questions about liability, remarked: "Whether the jail
has failed to provide proper medical treatment to inmates will be up to the courts. The county
has seven lawsuits against it pending at this time, all seven are against the jail, and three of them
are for improper medical treatment. The county will vigorously defend these cases. That as a
member of Central Arkansas Risk Management Association, the county will hire a CARMA
attorney to defend the county. Most of these cases are tried in federal district court because the
plaintiffs are alleging a constitutional violation."

62.     That Saline County knew of the unreasonable danger of this cost-cutting policy, and made such deliberate indifference a part of the pattern of conduct for the SCDC, amounting to deliberate indifference to the medical needs of the detainees and inmates, which directly caused the death of Thompson, and is continuing in nature.

63.     That the policymakers in Saline County, Arkansas, decided that it was more cost efficient for the county to defend lawsuits arising out of the systemic deficiencies in medical services for SCDC inmates, rather than employ sufficient medical personnel in the SCDC or to properly train SCDC in medical assessment and treatment.

64.     That a September 10, 2008 inspection of the SCDC revealed that the SCDC was not in compliance with Arkansas jail standards Section 4-1002-H and Section 9-1001-A because the SCDC did not have sufficient personnel on duty at all times; the same inspection also noted the facility was generally inadequately staffed and had an excellent medical care room but a complete absence of medical staff personal at the SCDC. (**See attached Exhibit B – 9/10/2008 Jail Inspection Report**).

65.     That in addition to the death of Johnny Dale Thompson, Jr., the Defendants herein were aware that two other pretrial detainees died while in the custody of the SCDC immediately prior to Thompsons's death, on or about the 6th day of July, 2008 and the 26th day of July, 2008. Following the death of Thompson, two other pretrial detainees died while in the custody of the SCDC on approximately the 4th day of July, 2009, and on or about April 13, 2011, constituting an intentional failure to remedy systemic deficiencies in medical care and services at SCDC.

## "FAILURE TO TRAIN"

66.     Plaintiff re-alleges and incorporates each and every allegation set forth in paragraphs 1 through 65 as if fully set forth herein.

18

67.     That the medical assessment and medical treatment training practices in Saline County, Arkansas are constitutionally inadequate.

68.     That Saline County, Arkansas, is deliberately indifferent to the rights of others in adopting its SCDC personnel training practices, and the failure to train reflects a deliberate and conscious choice by Saline County, Arkansas.

69.     That the deficiencies in Saline County's training procedures actually and proximately caused the plaintiff's injury and death.

70.     That the Defendants herein, individually and in concert, had knowledge of, and were deliberately indifferent to Plaintiff and deprived him of his constitutional federal protected rights, in the following actions:

(a)     That in 2008, the Saline County was deliberately indifferent when the Saline County Quorum Court, acting under the color of state law, specifically decided not to re- hire medical professionals for the SCDC; and to require the SCDC to rely solely upon the Saline Memorial Hospital Emergency Room and SCDC, inadequately or untrained nonmedical staff for medical treatment of citizens incarcerated in the facility at the time of Thompson's death;

(b)     That the Saline County Quorum Court was deliberately indifferent when it refused to honor the sheriff's office request for medical personnel at the jail and instead, on November 17th, 2009, finally redirected the remaining earmarked $13,600.00 from the medical fund, which had been specifically allotted to be spent at the SCDC for medical purposes, to the capital outlay vehicle fund, by enacting Appropriation Ordinance No. 2009-91; (**See attached Exhibit "C" – Ordinance 2009-91**).

(c)     That when Thompson was taken into the custody of Deputies Furr and Hall and transported to and received by the SCDC, Mr. Thompson had an obviously serious need for immediate medical intervention for a life-threatening intoxication of accidental ingestion of prescription medication;

(d)     That while in the custody of Deputies Furr and Hall, and while in the custody of Jailer King and the SCDC, Mr. Thompson exhibited common signs and symptoms of acute drug intoxication, which would be obviously evident to a lay person; including but not limited to lethargy, disorientation, admitted drug ingestion, respiratory distress, stupor, coma, falling in and out of consciousness, and ultimately death;

19

(e)     That the Defendants herein, and others witnessing the event, were aware of Mr. Thompson's obvious serious need for medical treatment for a life-threatening intoxication of prescription medication;

(f)     That the Defendants herein acted with deliberate indifference, by failing to provide Mr. Thompson with prompt medical care and attention within a reasonable time, and also  in violation Arkansas Jail Standard Section 5-1006;; and

(g)     That Mr. Thompson, who was in custody of the SCDC for an alleged misdemeanor in an unsupervised isolation cell, could not seek medical treatment for himself and lost his life when the Defendants herein blatantly denied Mr. Thompson's constitutional right to life and liberty;

71.     The actions of the Defendants posed a concurrent, known substantial risk of serious harm. Under the totality of the circumstances, the Defendants' pattern of action towards Johnny Dale Thompson, Jr., including but not limited to the Defendants' lack of admittedly properly trained staff, and their failure to supervise, the failure of Saline County to provide constitutionally required medical care for citizens in custody of the SCDC, resulted in deliberate indifference to the known substantial risk of serious harm to Johnny Dale Thompson, Jr.

72.     The foregoing Defendants' acts and omissions constitute a conspiratorial and individual deliberate indifference to Johnny Dale Thompson Jr.'s safety and medical needs, and proximately caused his injuries and death in violation of his rights under the Fifth and Fourteenth Amendments of the U.S. Constitution and constitute a violation of 42 U.S.C. § 1983.

**V.**

**COUNT 2. VIOLATION OF THE ARKANSAS CIVIL RIGHTS ACT**

73.     Plaintiff re-alleges and incorporates each and every allegation set forth in paragraphs 1 through 72 as if fully set forth herein.

74.     As personal representative of the Estate of Johnny Dale Thompson, Jr., Plaintiff has a claim under the Civil Rights Act, Ark. Code Ann. §16-123-101, *et seq*., which grants a right of action for the deprivation of rights created by the Arkansas Constitution.

75.     The foregoing Defendants' acts and omissions constitute a violation of the Arkansas Civil Rights Act of 1993, because Johnny Dale Thompson, Jr.'s Arkansas constitutional rights under Article 2, Section 8, that of the right to not be deprived of life, liberty, or property without due process of law, was violated. Additionally, the Defendants' acts and omissions constitute a violation of Johnny Dale Thompson, Jr.'s Arkansas constitutional rights under Article 2, Section 9, that the right to be free from cruel and unusual punishment was violated.

76.     Defendants unlawfully and unreasonably deprived Johnny Dale Thompson, Jr., of life and liberty by subjecting him to deprivation of medical care, resulting in Johnny Dale Thompson, Jr., suffering substantial pain, mental anguish and, ultimately, death.

77.     Under the Arkansas Civil Rights Act, Plaintiff is entitled to legal and equitable relief on behalf of the Estate, pursuant to Ark. Code Ann. §16-123-105.

78.     Under the Arkansas Civil Rights Act, Plaintiff is entitled to recover compensatory damages, punitive damages, as well as costs of litigation and a reasonable attorney's fee.

## VI.

## COUNT 3. WRONGFUL DEATH ACTION UNDER STATE LAW

79.     Plaintiff re-alleges and incorporates each and every allegation set forth in paragraphs 1 through 78 as if fully set forth herein.

80.     That the Plaintiff, Elaine Thompson, a citizen and resident of Columbia County, Arkansas, is the mother of and has been duly appointed by the Saline County, Arkansas, Probate

Court on June 1, 2009, as the personal of the estate of her son, Johnny Dale Thompson, Jr.,

deceased. Johnny Dale Thompson, Jr., was at all relevant times a resident of Saline County,

Arkansas, prior to his death.

81.     That the Plaintiff, along with the individuals set out in Paragraph 60, *infra,* has a

wrongful death action against all of the defendants under the laws of the State of Arkansas based

upon the facts described above.

82.     That the individuals named as Defendants herein are officials and employees of

Saline County, Arkansas, and all defendants were acting under the color of law state law at the

times complained of herein.

83.     As personal representative of the estate of Johnny Dale Thompson, Jr., Plaintiff

has a claim under the Civil Rights Act, Ark. Code Ann. §16-123-101, *et seq.,* which grants a

right of action for the deprivation of rights created by the Arkansas Constitution.

84.     As a direct and proximate result of his injuries received through the deliberate

indifference of the Defendants herein, acting individually, concurrently, and in concert in

furtherance of a conspiracy, deprived Thompson of his federally protected rights which caused

the death of the Johnny Dale Thompson, Jr., at the age of 28 years.

85.     That the Plaintiff's son, Johnny Dale Thompson, Jr., died of accidental, acute

prescription drug intoxication, in the Saline County Detention Center on December 18, 2008, at

approximately 9:30 p.m.

86.     On December 18, 2008, at approximately 9:30 p.m., the Defendants herein actions

acted with deliberate indifference while Mr. Thompson was in custody of the SCDC, and their

actions and omissions as described herein, were the proximate cause of Mr. Thompson's death.

Specifically, the relevant acts include all the aforementioned allegations and the following:

(a)     Failing to re-hire and maintain on site medical personnel at the SCDC for Thompson and other citizens imprisoned and held in the custody of the SCDC;

(b)     Failing to train the jailers assigned with the duty of evaluating the medical needs of pretrial detainees during the booking procedure;

(c)     Failing to adequately monitor and supervise pretrial detainees in cells after the booking procedure; and

(d).     Failing to maintain readily accessible medical and medication records on prior detainees who have previously been incarcerated at SCDC, in violation of the Arkansas Jail Standard Section 5-1004; 6-2002; and 10-1001 through 1009 and 1012.

87.     That the foregoing Defendants' acts and omissions constitute a violation of the

Arkansas Civil Rights Act, based on Johnny Dale Thompson, Jr.'s, Arkansas constitutional rights

under Article 2, Section 8, not to be deprived of life, liberty, or property without due process of

law.

88.     That the Defendants actually and proximately caused Johnny Dale Thompson, Jr.,

to suffer a deprivation of his Arkansas constitutional rights and resulting damages.

89.     That the Defendants herein acted under a custom or policy of Saline County,

Arkansas, at all pertinent times.

90.     That the Defendants herein caused Johnny Dale Thompson, Jr., to suffer a loss of

liberty and ultimately, loss of life, as protected by the Arkansas Constitution, and without

substantive and procedural due process of law, resulting in damage to Thompson.

91.     That the Defendants unlawfully and unreasonably deprived Johnny Dale

Thompson, Jr., of life and liberty by subjecting him to deprivation of medical care, resulting in

Johnny Dale Thompson, Jr., suffering substantial pain, mental anguish and, finally, death.

92.     That on December 18, 2008, at the time of Johnny Dale Thompson, Jr.'s death, he was twenty-eight (28) years of age, he had a normal life expectancy remaining of fifty (50) years, and had previously been earning a livelihood for himself and contributing to his family.

93.     That Thompson left surviving him three minor children, namely H.T.; K. T., and C.T., one sister Jessica Thompson-Dooley; his mother, Elaine Thompson; his father Johnny Thompson, Sr.;  each of whom have suffered and will continue to suffer mental anguish by reason of such wrongful death.

94.     That the Plaintiff, individually as one of the heirs at law, and as personal representative of the estate of Johnny Dale Thompson, Jr., deceased; is entitled to recover for the following damages for Mr. Thompson's death, all of which were proximately caused by the deliberate indifference of the Defendants:

(a)     Pecuniary injuries sustained because of loss of contributions; loss of consortium including loss of the society, services, companionship, and relationship; mental anguish, all in a sum in excess of ($2,000,000) Two Million Dollars;

(b)     Mental anguish suffered by his three (3) surviving minor children, namely H. T., K. T., and C. T.; one sister Jessica Thompson, one mother Elaine Thompson, one father Johnny Thompson, Sr.;  in a sum in excess of ($2,000,000) Two Million Dollars:

(c)     Medical expenses attributable to the fatal injury and the reasonable value of funeral expenses in a sum in excess of  ($10,000) Ten Thousand Dollars;

(d)     Loss of life and enjoyment of the decedent, Johnny Dale Thompson, Jr.; in a sum in excess of ($2,000,000) Two Million Dollars.

95.     As a result of the deliberate indifference in disregard of the constitutional rights and safety of others on the part of the Defendants, punitive damages should be imposed in the

24

amount in excess of ($1,000,000) One Million Dollars, to punish the Defendants and deter such conduct in the future.

## ADDITIONAL PRAYER FOR RELIEF

96.    Plaintiff re-alleges and incorporates each and every allegation set forth in paragraphs 1 through 95 as if fully set forth herein

97.    As a direct and proximate result of the acts and omissions described in the preceding paragraphs of this Complaint, the plaintiff, Elaine Thompson, individually and as Personal Representative of the Estate of Johnny Dale Thompson, Jr., seeks damages on behalf of the Estate and the individual plaintiffs, and aforementioned heirs at law, as set-forth in paragraphs 64 and 65 above.

98.    Tthe Plaintiff, Elaine Thompson, individually and as Personal Representative of the Estate of Johnny Dale Thompson, Jr., deceased, and his survivors herein named,  also prays that the Court enter a judgment granting the following relief:

a.    A declaratory judgment that the Defendant's actions, policies, and practices complained of herein violated Johnny Dale Thompson, Jr.'s rights as secured by the Fifth and Fourteenth Amendments to the U.S. Constitution and Art. 2 §§ 8 and 9 of the Arkansas Constitution;

b.    Injunctive relief to prohibit the immediate, imminent irreparable harm presently threatened by the continuation of constitutional violations to SCDC detainees including, but not limited to, the Defendants' deliberate indifference to inadequate training, inadequate supervision, inadequate staffing of medical personnel, and failure to provide medical care resulting from injuries sustained by detainees while incarcerated in the Saline County Detention Center, failure

to remedy systematic deficiencies in medical services, and for any and all other relief to which is proper under the circumstances; and

      c.      Reasonable attorney's fees and costs as allowable under 42 U.S.C. §1988, and any other provision under federal or Arkansas Law.

## VII.

## DEMAND FOR A JURY TRIAL

99.      Plaintiff hereby requests a trial by jury.

Respectfully submitted,

**ELAINE THOMPSON, individually and
in her capacity as Administratrix
of the Estate of Johnny Dale Thompson, Jr.**

By:

Guy "Randy" Satterfield, AR Bar No. 81140
SATTERFIELD LAW FIRM, PLC
P.O. Box 1010
Little Rock, Arkansas 72203-1010
Tele: (501) 376-0411, Fax: 374-2834
Email: satterfieldlaw@comcast.net

STATE OF ARKANSAS)
                  )SS:
COUNTY OF ~~PULASKI~~)
           Saline

## VERIFICATION

I, the undersigned, individually, as next of kin of Johnny Thompson, and as Administrator of the Estate of Johnny Thompson, deceased, hereby swear and affirm that the information contained in the above complaint is true and correct to the best of my information, knowledge and belief.

Elaine Thompson

SUBSCRIBED AND SWORN to before me a Notary Public on this 2 day of May , 2010.

My Comm. Expires: 1-20-2014

NOTARY PUBLIC

## Saline jail dead 3rd one in '08; cause of death not known

Saturday, 20 December 2008

A 28-year-old Benton man died late Thursday after being detained at the Saline County jail, authorities said Friday.

The death of Johnny Thompson marks the third death this year at the new detention center in Benton. The first two deaths were reported as suicides.

The cause of death Thursday is not yet determined, but sheriff's Capt. Scotty Courtney said "no foul play is suspected."

Thompson was arrested Thursday evening on multiple warrants charging him with failure to appear in court. The warrants were issued by various law enforcement agencies in the state, Courtney said.

Courtney said Thompson was brought to the jail around 7 o'clock and was going through the booking process. Just before 9:20, the jail staff called 911. Med-Tran ambulance personnel took Thompson to Saline Memorial Hospital in Benton, where he was pronounced dead at 9:30, Courtney said.

Thompson's body has been sent to the state Crime Laboratory and Arkansas State Police authorities have taken over the investigation.

The first jail death was reported on July 6. Wade Hart, 21, of Benton was found dead in a cell after being arrested on a charge of public intoxication.

"Breakfast had been served about 7:30, and he was found when they were picking up trays," Courtney said.

"He used a piece of his clothing, which was tied around his neck and the sink and commode, which are one piece. He tied it around a piece of the unit and basically suffocated."

Courtney said that incident was reviewed and he does not believe that inadequate staffing — something the jail continues to struggle with — contributed to the death on July 6.

"Everything I've looked at, as far as policies and procedures go, doesn't lead me to believe that anything could have been changed to prevent this, unless we hire a jailer for every prisoner we have," he has said.

"Unless you have somebody watching them every minute, things like this can happen when a person is really determined [to harm himself]."

On July 26, Giovanni Gurrieri Jr., 26, of Little Rock was found dead in a cell with a bed sheet tied around his neck. The other end of the bed sheet was tied around the top bunk of a bed.

Courtney and jail administrator Lt. Hugh Gentry said Gurrieri had shown no signs that he was suicidal or depressed and that he was expected to be released later that day. Gurrieri was also brought into the jail on a failure to appear warrant from Bryant for traffic violations. Officials said Gurrieri originally was to be released from jail even before the death, but after appearing in Saline County District Court, more charges were levied against him. The second warrant charged Gurrieri with breaking and entering and criminal attempt to commit theft of property, according to an arrest report from the Saline County jail.

"Saline County detectives served him with a felony warrant, and he was put back in jail," Courtney said, "but he was expected to be released [the day of his death]."

Courtney said neither Hart nor Gurrieri showed any signs of suicide or depression. He said if that had been noticed, administrators would have placed them under suicide watch. When placed under suicide watch, a prisoner's clothing is removed to prevent him or her from using any part of the clothing to cause harm to themselves, Courtney said. He also said the general population of inmates is checked about every hour.

"If you're determined to do it, you can kill yourself with a sock or underwear," Courtney said. "There was no indication at all that he had these kinds of thoughts."

Saline County Sheriff Phil Mask said after the second death that he was distraught of both deaths, but still stood by the accounts of his jail staff.



PLAINTIFF'S EXHIBIT "A" or 2

Students at the luncheon
said they were excited to
learn firsthand about pa-
pers and what he stands for.

Vaida said.
"This spirit is the heart
of this college mission,"
Gearhart said.

# County jail death prompts inquiry

**ARKANSAS DEMOCRAT-GAZETTE**

SALINE COUNTY — Sa-
line County sheriff's officers
on Thursday were investi-
gating the Wednesday death
of a man who was waiting
to be booked into the Saline
County jail.

Casey Babovec, 30, of the
East End Community in Sa-
line County was pronounced
dead at Saline County Memo-
rial Hospital on Wednesday
afternoon.

Babovec was arrested
about 12:30 p.m. Wednesday
on a charge of driving while
intoxicated after a traffic stop
in Saline County, according
to a report from the sheriff's
office. He was taken to the jail
about 1 p.m.

According to a news re-
lease from the sheriff's of-
fice, Babovec became agitated
about 5 p.m. and was placed
in a holding cell where he
struck another inmate.

Detention officers broke
up the fight, removed Bab-
ovec and attempted to subdue
him, the news release said.
He was placed in a separate
holding cell and became un-
responsive shortly after the
fight, the news release said.
Sheriff's officers started
CPR, called an ambulance
and attempted to resuscitate
him. He was taken to Saline

County Memorial Hospital,
where he was pronounced
dead.

Babovec's body was sent
to the state Crime Labora-
tory for autopsy. Deputies
launched an internal investi-
gation into the death and are
interviewing other inmates
who had contact with Bab-
ovec in the holding cell.

According to the news
release, several inmates told
officers that Babovec said he
had eaten about two grams of
methamphetamine as he was
being pulled over in the traf-
fic stop.

PLAINTIFF'S
EXHIBIT
"A" 2

Blumberg No. 5198

SALINE COUNTY QUORUM COURT
AGENDA
OCTOBER 21, 2008

QUORUM COURT MEETING-----------------------------------------------October 21, 2008

PLACE-------------------------------------------------------- Bob Herzfeld Memorial Library

6:30 P.M.-------------------------------------------------------Call Meeting to Order

PLEDGE OF ALLEGIANCE

INVOCATION

CLERK: Call the Roll

APPROVAL OF MINUTES

COMMITTEE REPORTS:

Randy Brown Civil Engineer, Programs Staff-Water Resources
Warrants Served—Written Report
Saline County Finance/Personnel Committee meeting on November 3, 2008 will be held at
the County Jail, 735 Neeley Street

OLD BUSINESS:

| Exhibit A. | Ordinance | Adding Roads—Third Reading |

NEW BUSINESS:

| Exhibit B. | Resolution | Declaring an Additional Holiday For 2008 | — Pulled |
| Exhibit C. | Ordinance | Saline County Election Commission |
| Exhibit D. | Ordinance | Jail |
| Exhibit E. | Ordinance | Saline County Airport Commission |
| Exhibit F. | Ordinance | Millage Rates  (Listed) |
| Exhibit G. | Ordinance | Emergency Fund/County General Fund |
| Exhibit H. | Ordinance | CSEPP |
| Exhibit I. | Ordinance | Sheriff-Selective Law ENF/DUI |
| Exhibit J. | Ordinance | Saline County Master Street Plan |
| | | Official Detention Facility Compliance Report |

*231*


PLAINTIFF'S
EXHIBIT
"B" - 14
pgs.
Blumberg No. 5199

232

## WARRANTS SERVED
### ~~September~~ 2008

| | FELONY | MISD | BODY ATTACHMENT | TOTAL | HOT CHECK MISD | HOT CHECK FELONY | ATTEMPTS | MILAGE |
|---|---|---|---|---|---|---|---|---|
| WARRANTS | 60 | 413 | 3 | 476 | 3 | 13 | 612 | 6654 |
| SHERIFF | 7 | 29 | | 36 | 3 | 1 | | |

| | | |
|---|---|---|
| TOTAL | | 512 |

# WARRANTS SERVED
## September 2008

| | FELONY | MISD | BODY ATTACHMENT | TOTAL | HOT CHECK MISD | HOT CHECK FELONY | ATTEMPTS | MILAGE |
|---|---|---|---|---|---|---|---|---|
| WARRANTS | 55 | 191 | 3 | 249 | 3 | 36 | 297 | 6826 |
| SHERIFF | 8 | 27 | | 35 | 5 | 1 | | |

| | |
|---|---|
| TOTAL | 284 |

OFFICIAL

DETENTION FACILITY COMPLIANCE REPORT

NAME OF FACILITY _Saline Co Jail_

ADDRESS _735 S. Neeley St, Benton, Ar 72015_

COUNTY JUDGE OR MAYOR _Lanny Fite_          _501-303-5609_

FACILITY SUPERVISOR _Lt. Hugh Gentry_          FACILITY PHONE _501-303-5603_

PERSON INTERVIEWED _SAB_          TITLE _Jail Admin._

SHERIFF OR CHIEF OF POLICE _Phil Mask_

LOCATION OF JAIL _SAB_

DATE OF CONSTRUCTION _2006_          DATE REMODELED _____

_Pop - 9-10-08 - 155_    _20 Females_

CELL DESIGN    _On File_          MAXIMUM CAPACITY _183_    _4-70?_

| 1 MAN | SIZE | X | SQ. FT. | | SIZE | X | SQ. FT. |
|-------|------|---|---------|--|------|---|---------|
| 2 MAN | SIZE | X | SQ. FT. | | SIZE | X | SQ. FT. |
| 3 MAN | SIZE | X | SQ. FT. | | SIZE | X | SQ. FT. |
| 4 MAN | SIZE | X | SQ. FT. | | SIZE | X | SQ. FT. |

HOW MANY PAID PERSONNEL (JAILORS & MATRONS) ARE ASSIGNED DUTIES IN THE JAIL?

Supervisors _4_    Full Time Males _12_    Full Time Females _12_

Part Time Males _____    Part Time Females _____

_(Attached)_

WHAT IS THE SHIFT FORMULA?

_5 AM_ TO _5 PM_    _5 PM_ TO _5 AM_          _____ TO _____

HOW MANY PERSONNEL TO EACH SHIFT INCLUDING SUPERVISORS? _6 : 6_

Sign _Velba Shepard_          Inspection Date _Sept. 10-08_
          Committee Member

Sign _____          Sign _____
          Committee Member                    Committee Member

Sign _____          Sign _Charl S.___
          Committee Member                    Committee Chairman

Sign _____          Sign _Lt. Hugh Gentry_
          Committee Member                    Person Interviewed

234

STATE OF ARKANSAS
ADULT DETENTION FACILITIES

DETENTION FACILITY ___Saline Co. Jail___    DATE OF INSPECTION 9-10-08

All Adult Detention Facilities in Arkansas must comply with all applicable mandatory
requirements. Failure to meet applicable requirements will cause the facility to be
considered in non-compliance and subject to further action by this Agency in compliance
with Act 530 of 1985 — Section 4.

<u>MINIMUM MANDATORY REQUIREMENTS</u>                                    <u>IN COMPLIANCE</u>

III.  ADMINISTRATION:

      Does the Facility's operations comply with
      requirements as stated in Chapter III relative to
      the following:

      Section 3 — 1004 —      Written Policy              YES __✓__ NO ____ N/A ____

      Section 3 — 1005 —      Budget                      YES __✓__ NO ____ N/A ____

IV.   PERSONNEL:

      Does the facility meet personnel requirements as
      stated in Chapter IV relative to the following:

      Section 4 — 1002 —      Personnel file with required
      A — B — C — D           records.                    YES __✓__ NO ____ N/A ____

      Section 4 — 1002 — E    Has each employee completed
                              the basic jail course?      YES __✓__ NO ____ N/A ____

      Section 4 — 1002 — H    Does the facility have
                              sufficient personnel?       YES ____ NO __✓__ N/A ____

                              If not, has the administrator
                              requested such in writing?  YES __✓__ NO ____ NA ____

V.    RECORD SYSTEM:

      Does the facility maintain a minimum record system in
      compliance with Chapter V relative to the following:

      Section 5 — 1002 —      Are proper papers for commit-
                              ment being maintained?      YES __✓__ NO ____ N/A ____

      Section 5 — 1003 —      Is a proper jail log or detention
                              record being kept?          YES __✓__ NO ____ N/A ____

1

235

**V.**    RECORD SYSTEM:   continued

Section 5 - 1004 -    Is confinement information being gathered on each inmate?    YES __✓__ NO ____ N/A ____

Section 5 - 1005 -    Is prisoner's personal property being handled properly?    YES ____ NO ____ N/A ____

Section 5 - 1006 -    Are proper medical records being kept relating condition of prisoner at intake?    YES __✓__ NO ____ N/A ____

Section 5 - 1007 -    Does the facility have a written policy on strip searches?    YES __✓__ NO ____ N/A ____

Section 5 - 1008 -    Is a copy of the jail rules provided to the prisoner?    YES __✓__ NO ____ N/A ____

Section 5 - 1010 -    Are disciplinary actions recorded in writing?    YES __✓__ NO ____ N/A ____

Section 5 - 1011 -    Is there a written record of unusual occurrences?    YES __✓__ NO ____ N/A ____

**VI.**    RIGHTS OF ACCUSED IN CUSTODY:

Section 6 - 1001 -    Are inmate rights posted and is a copy furnished them?    YES __✓__ NO ____ N/A ____

Section 6 - 1002 -    Do inmate rights contain provisions A thru G?    YES __✓__ NO ____ N/A ____

Section 6 - 1003 -    Does written policy for disciplinary actions provide for requirements A thru D?    YES __✓__ NO ____ N/A ____

**VII.**    RULES OF CONDUCT FOR PERSONNEL:

Section 7 - 1001 - 1002 -    Does facility policy and procedures manual provide for requirements listed in these sections?    YES __✓__ NO ____ N/A ____

**VIII.**    PRISONER SEPARATION:

Section 8 - 1001 -    Does the facility provide complete separation of females from the area where males are confined?    YES __✓__ NO ____ N/A ____

Section 8 - 1001 -    Are juveniles, charged as adults, separated from the rest of the inmates?    YES ____ NO ____ N/A ____

2

236

VIII. ____ .JNER SEPARATION:   continued

Section 8 - 1001 -   Are youthful offenders under age
18, who are under The Juris-
diction of The Juvenile Court
incarcerated?                                    YES____ NO _✓_ N/A____

Section 8 - 1001 -   If so, are they completely sep-
arated from the rest of the jail
population?                                       YES____ NO____ N/A _✓_

Section 8 - 1001 -   Are prisoners being separated by
class?                                           YES _✓_ NO____ N/A____

Section 8 - 1002 -   Are work release and trusty
prisoners separated from other
prisoners?                                       YES _✓_ NO____ N/A____

IX.   SECURITY:

Does the facility's security procedures and practices
comply with minimum requirements as stated in Chapter IX
relative to the following:

Section 9 - 1001 - A   Does the facility have sufficient
personnel on duty at all times?                  YES____ NO _✓_ N/A____

Section 9 - 1001 -
A - B -    .          Are proper cell checks being
made and recorded?                               YES _✓_ NO____ N/A____

Section 9 - 1001 - C   Are female officers on duty when
females are incarcerated?                        YES _✓_ NO____ N/A____

Section 9 - 1001 - D   Does the policy manual have a
search procedure for control of
contraband?                                      YES _✓_ NO____ N/A____

Section 9 - 1002 - E   Does the policy manual have a
procedure for emergency sit-
uations which includes what to
do in case of fire, escapes,
riots, smoke situations, inmate
disturbances and assaults?                       YES _✓_ NO____ N/A____

Section 9 - 1002 - G   Are officer's weapons removed
before entering secure area?                     YES _✓_ NO____ N/A____

Section 9 - 1002 - I   Does the facility have a policy
for key control?                                 YES _✓_ NO____ N/A____

Section 9 - 1002 - J   Does the facility have a written
policy addressing security mea-
sures for trusty-status inmates?                 YES _✓_ NO____ N/A____

3

237

X. MEDICAL, DENTAL AND MENTAL HEALTH CARE:

Section 10 – 1001 –  Does the facility have a medical and dental plan in writing and on file to insure that medical services or practices are available to all those in custody?  YES ✓ NO____ N/A____

Section 10 – 1002 –  If medical care is provided at the facility, is proper space provided? /LCRJ/  YES____ NO____ N/A ✓

Section 10 – 1003 –  Does the facility have an emergency and sick call procedure?  YES ✓ NO____ N/A____

Section 10 – 1004 –  Are written records of inmate's medical and dental complaints being kept? Does this record include results of the health encounter?  YES ✓ NO____ N/A____

Section 10 – 1005 –  Are records kept of medicine prescribed and administered?  YES ✓ NO____ N/A____

Section 10 – 1005 –  Is medicine kept in a secure area?  YES ✓ NO____ N/A____

Section 10 – 1009 –  Is there a medical training program such as C.P.R. and first aid or a suitable alternative?  YES ✓ NO____ N/A____

XI. MAIL, COMMUNICATIONS AND VISITING:

Does the facility comply with minimum requirements regarding privileges as stated in Chapter XI relative to the following:

Section 11 – 1001 –  Rules for visiting?  YES ✓ NO____ N/A____

Section 11 – 1002 –  Is a visitor's log kept?  YES ✓ NO____ N/A____

Section 11 – 1005 –  thru  Is there a written policy for correspondence and incoming mail?  YES ✓ NO____ N/A____
11 – 1009 –

Section 11 – 1010 –  Is there a written policy for use of the phone and are prisoner's calls logged where necessary?  YES ✓ NO____ N/A____

XII. FOOD SERVICE:

Section 12 – 1001 –  Are meals being served as required?  YES ✓ NO____ N/A____

4

*238*

XIII.    continued

| Section 12 - 1001 - | Are menus approved by a dietician? | YES ✓  NO___  N/A___ |
| Section 12 - 1002 - | Are records being kept of the food actually served? | YES ✓  NO___  N/A___ |
| Section 12 - 1003 - | Has kitchen been inspected by Health Department? | YES ✓  NO___  N/A___ |
| Section 12 - 1006 - | Is garbage removed from the cells immediately after eating? | YES ✓  NO___  N/A___ |

* 24 hour overnight facilities are exempt

XIV.    SAFETY:

| Section 14 - 1002 - | Has the facility been inspected by local fire department in the past year? | YES ✓  NO___  N/A___ |
| Section 14 - 1003- | Does the facility have a written fire plan and is personnel familiar with it? | YES ✓  NO___  N/A___ |
| Section 14 - 1004 - | Does the facility have a written plan for all other emergencies and are evacuation procedures detailed? | YES ✓  NO___  N/A___ |
| Section 14 - 1005 - | Are exits plainly marked? | YES ✓  NO___  N/A___ |
| Section 14 - 1006 - | Are cleaning fuids, toxic and caustic materials stored properly? | YES ✓  NO___  N/A___ |
| Section 14 - 1008 - | Does the facility have up to date fire fighting equipment and access to a compressed air breathing apparatus? | YES ✓  NO___  N/A___ |

XV.    INMATE SERVICES:

| * | Section 15 - 1002 - | Does the facility have a written policy to provide recreation and leisure time activities, library services, social and religious services? | YES ✓  NO___  N/A___ |
| * | Section 15 - 1005 - | Is outside exercise provided? | YES___  NO___  N/A ✓ ___ |

* 14 day (and under) facilities are exempt
* 24 hour overnight facilities are exempt

5

*239*

**ATT.    EXISTING FACILITIES:**

| Section 16 - 1004 - | Is lighting adequate? | YES ✓ NO ___ N/A ___ |

Section 16 - 1004 -   Is temperature maintained at a proper level?   YES ✓ NO ___ N/A ___

Section 16 - 1004 -   Is an automatic cut-in generator for emergency lighting and equipment provided?   YES ✓ NO ___ N/A ___

Section 16 - 1005 -   Are smoke and fire alarms present?   YES ✓ NO ___ N/A ___

Section 16 - 1006 -   Is there a cell that can be used to house the handicapped?   YES ✓ NO ___ N/A ___

Section 16 - 1007 -   Are there at least two exits from each housing area?   YES ✓ NO ___ N/A ___

Section 16 - 1008 -   Is there a proper booking area located inside the secure area?   YES ✓ NO ___ N/A ___

Section 16 - 1009 -   Is there an alcohol unit?   YES ✓ NO ___ N/A ___

** Section 16 - 1010 -   Do cells meet general housing requirements?   YES ✓ NO ___ N/A ___

* ** Section 16 - 1011 - 1012 -   Do the cells meet the footage requirement?   YES ✓ NO ___ N/A ___

Section 16 - 1013 -   Is there an observation cell?   YES ✓ NO ___ N/A ___

* ** Section 16 - 1014 -   Will activity rooms meet requirements?   YES ✓ NO ___ N/A ___

Section 16 - 1015 -   Is there proper storage space for bedding and clothing?   YES ✓ NO ___ N/A ___

* ** Section 16 - 1016 -   Are indoor or outdoor exercise areas provided?   YES ___ NO ✓ N/A ___

Section 16 - 1017 -   Is there adequate storage space for security equipment and cleaning supplies?   YES ✓ NO ___ N/A ___

Section 16 - 1018 -   Is adequate space provided for administrative and staff functions?   YES ✓ NO ___ N/A ___

Section 16 - 1019 -   Is there adequate space provided for food preparation and handling?   YES ✓ NO ___ N/A ___

Section 16 - 1020 -   Is there a proper visiting area?   YES ✓ NO ___ N/A ___

* 14 day (and under) facilities are exempt
** 24 hour overnight facilities are exempt

6

240

INSPECTION DATE: *1-10-08*    (INITIAL INSPECTION OR RE-INSPECTION *INITIAL*

INSPECTION TIME SHIFT:  FIRST_____ SECOND_____ THIRD_____

RE-INSPECTION REQUIRED:  YES_____ NO_____ SIGNED_____

MAILINGS SENT:  COUNTY JUDGE_____ COUNTY CLERK_____

SHERIFF_____ QUORUM COURT_____

CHIEF OF POLICE_____ MAYOR_____ CITY COUNCIL_____
CIRCUIT JUDGE_____

ANY ACTION REQUIRED IN IMMEDIATE NON-COMPLIANCE?  YES_____ NO_____

DIRECTOR'S HELP REQUIRED?  YES_____ NO_____

LIST REASONS FOR  (NO AND N/A)

| SECTION NO. | NO or N/A | REASON |
|---|---|---|
| 1-1002-N/9-1001-A | NO — | Insufficient staff to man shifts properly and to provide adequate security for staff & inmates |
| 0-1002 | NO — | Jail has nice Med. infirmary but NO personnel to staff or use it |
| 1-1005/16-1016 | NO — | Jail has outside exercise Area, but lack of staff precludes its use. |

Note: Population 9-10-08 = 135 males
                                    20 females

This Jail is badly understaffed!

241

7

## ADMINISTRATION

(1)LT HUGH GENTRY (JAIL ADMINISTRATOR)
(2)SGT DRU REED (ASSISTANT JAIL ADMIN/ JAILER)
(3)SGT RAY PENNINGTON(ASSISTANT JAIL ADMIN/TRANSPORT)

**3**

## TRANSPORT

(4)BILLY HOOLAPA (COURTS OFFICER/ TRANSPORT ONLY)
(5)BRANDON FORD (COURTS OFFICER/ TRANSPORT ONLY)
(6)OFFICER JIMMY LESTER  (COURTS OFFICER TRANSPORT ONLY)

**3**

## SHIFT SUPERVISORS

(7) CPL. CHRISTY LOBBS
(8) CPL CHAD WESTBROOK (JAILER/ SHIFT SUPERVISOR)
(9) CPL VICKY CLARK (JAILER/ SHIFT SUPERVISOR)
(10) CPL KERI SESSIONS

**4**

## MEN  (JAILERS)

(11) RYAN MCKINNEY
(12) GLEN FAULKNER
(13) **DAVID GREEN**                 **ASSIGNED TO KITCHEN** only
(14) CHRISTOPHER MAHER
(15) ULENZEN KING
(16) **FREDDY WISE**                 **ASSIGNED TO KITCHEN** only
(17) KENNETH DURHAM
(18)  ALLEN LEECH
(19) JAMES HART
(20) DOMINICK MARANGONI
(21) CALVIN REED
(22) JONATHON CALMA

**12**

## FEMALES (JAILERS)

(23) RUTH SHILLING
(24) JILL ERWIN
(25) DEBRA NICHOSI
(26) JACLYN LOBBS
(27) MELISSA HOLCOMBE
(28) LISA TODD
(29) TAMMY PENDIGRASS
(30) PHYLLIS HARRELSON
(31) BRANDI PINTO
(32) ERICKA JONES
(33) BRITTNEY TODD
(34) SHARA SIEVERS

**12**

## MEDICAL

**(NURSE VACANT)**
**(DOCTOR VACANT)**

**0**

242

1 man cells __8__ size

$$7^{ft} \times 11.5^{ft} = SqFt \quad \underline{80.5}$$
$$8^{ft} \times 8.75^{ft} = SqFt \quad \underline{68.0}$$
$$8.75 \times 8.75^{ft} = SqFt \quad \underline{76.56}$$

2 man cells __30__ size  $7^{ft} \times 12.5^{ft} = SqFt \quad \underline{87.5}$

3 man cells __1__ size  $12.25^{ft} \times 15.5^{ft} = SqFt \quad \underline{189.88}$

4 man cells __4__ size

$$11.5^{ft} \times 15^{ft} = SqFt \quad \underline{172.50}$$
$$16.5^{ft} \times 16^{ft} = SqFt \quad \underline{264.0}$$
$$8.75 \times 21^{ft} = SqFt \quad \underline{183.75}$$

22 man   Dorm - two level





243

1 man cells __8__ size $\frac{7^{ft} \times 11.5^{ft}}{8 \times 8.75^{ft}}$ = sqft __80.5__
$8 \times 8.75^{ft}$ = sqft __68.0__
$8.75 \times 8.75^{ft}$ = sqft __76.56__

2 man cells __30__ size $7 \times 12.5^{ft}$ = sqft __87.5__

3 man cells __1__ size $12.25 \times 15.5^{ft}$ = sqft __189.88__

4 man cells __4__ size $11.5^{ft} \times 15^{ft}$ = sqft __172.50__
$16.5^{ft} \times 16^{ft}$ = sqft __264.0__
$8.75 \times 21^{ft}$ = sqft __183.75__

22 man  Dorm - two level




Exhibit "F"

APPROPRIATION ORDINANCE NO. 2009-91

BE IT ENACTED BY THE QUORUM COURT OF SALINE COUNTY, STATE OF ARKANSAS, AN ORDINANCE TO BE ENTITLED: "AN ORDINANCE TRANSFERRING 1800 COUNTY JAIL FUNDS FOR THE YEAR 2009."

Article 1.  There are hereby transferred County Jail Funds as follows:

TRANSFER FROM:
DEPT. 2400 - COUNTY JAIL
Line Item 2300  Food                          $13,600
         4700  Medical                         13,600
               TOTAL TRANSFER FROM             $27,200

TRANSFER TO:
Line Item 9400  Capital Outlay-Vehicles      $27,200

Article 2.  It is deemed necessary for the smooth operation of Saline County Government that this ordinance be approved.

DATE:     NOVEMBER 17, 2009          APPROVED _____
                                               LANNY FITE
                                               SALINE COUNTY JUDGE

ATTEST: _____    SPONSOR: FINANCE COMMITTEE
              FREDDY BURTON                     DOUG CURTIS, CHAIRMAN
              SALINE COUNTY CLERK               DAVID ALLINSON, VICE-CHAIRMAN

PLAINTIFF'S
EXHIBIT
" C "
Blumberg No. 5199