IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ELAINE THOMPSON, INDIVIDUALLY AND                                              PLAINTIFF
AS PERSONAL REPRESENTATIVE OF THE ESTATE
OF JOHNNY DALE THOMPSON, JR., DECEASED

V.                              NO. 4:11-CV-0379BSM

SALINE COUNTY SHERIFF PHIL MASK, INDIVIDUALLY AND
AS FORMER SHERIFF OF SALINE COUNTY, ARKANSAS;
SHERIFF BRUCE PENNINGTON, INDIVIDUALLY AND
AS SUCCESSOR AND CURRENT SHERIFF OF SALINE COUNTY, ARKANSAS;
HUGH GENTRY, INDIVIDUALLY AND AS JAIL ADMINISTRATOR
FOR ADULT DETENTION FOR SALINE COUNTY, ARKANSAS;
RAY PENNINGTON, INDIVIDUALLY AND AS SUCCESSOR
JAIL ADMINISTRATOR FOR ADULT DETENTION FOR
SALINE COUNTY, ARKANSAS;
TAMMY PENDERGRASS, INDIVIDUALLY AND AS CORPORAL FOR THE
SALINE COUNTY SHERIFF'S DEPARTMENT;
MIKE FROST, INDIVIDUALLY AND AS A LIEUTENANT FOR SALINE
COUNTY SHERIFF'S DEPARTMENT;
ED BUSH, INDIVIDUALLY AND AS SERGEANT FOR SALINE COUNTY
SHERIFF'S DEPARTMENT;
MORSTINE WILLOUGHBY, INDIVIDUALLY AND AS A
SERGEANT OF THE SALINE COUNTY SHERIFF'S DEPARTMENT;
ULENZEN C. KING, INDIVIDUALLY AND AS A FORMER
OFFICER FOR THE SALINE COUNTY DETENTION CENTER;
STEPHEN FURR, INDIVIDUALLY AND AS AN DEPUTY OF THE
SALINE COUNTY SHERIFF'S DEPARTMENT;
JAMES HALL, INDIVIDUALLY AND AS AN DEPUTY OF THE SALINE
COUNTY SHERIFF'S DEPARTMENT; and
SALINE COUNTY ARKANSAS
d/b/a/ SALINE COUNTY DETENTION CENTER                                          DEFENDANTS

**BRIEF IN SUPPORT OF**
**<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

**<u>Introduction</u>**

    The Complaint in this case consists of 43 pages, including exhibits. It is a well-intentioned

dissertation on jail administration generally, and a well-meaning polemic on standards in particular.

However, the Complaint does not establish wrongdoing on the part of anyone at the Saline County Detention Facility (SCDF) as of December 18, 2008, the date of death of Johnny Dale Thompson. Also, it does not establish a causal relationship between anything done or not done regarding the incarceration of Thompson.

### Facts

On December 18, 2008, police stopped a vehicle in which Johnny Dale Thompson was a passenger. The vehicle apparently had a defective or inoperable taillight. When the names of the occupants were run, it appeared that Thompson had outstanding warrants, including one from Bauxite, Arkansas. For that reason, he was transported to the SCDF to be booked.

Apparently at some time prior to the stop, Thompson ingested a quantity of drugs. The medical examiner's autopsy (Exhibit A) indicated that he had Hydrocodone in his system at toxic levels. Other drugs were also present. He slept in the police car on the way to SCDF, but was easily awakened by the arresting officer. Exhibit J-1. Jailer Ulenzen King was on duty at the booking desk and handled the booking process. Thompson's speech was somewhat slurred, and at one point, he asked for a chair to sit in. King had trouble keeping him awake, making a noise to get his attention by slapping the counter, but he did get all of the information he needed on his Booking Sheet and Booking Medical Sheet. Exhibits C-2 and C-3. In fact, an examination of those documents shows that Thompson was alert enough to give him some detailed information, including the fact that he suffered from seizures, and had taken what he thought was Dilantin.[1]

After the booking process was completed, he was given a blanket, and was placed in a holding cell to await the Bauxite officer's arrival to serve the warrant on him. The booking process

---

[1]The medical examiner's autopsy shows that Dilantin was not in his system. Exhibit A.

had begun around 7:25 p.m., and he was placed in the holding cell at 7:42 p.m. The Bauxite officer arrived at 9:09 p.m., and when he and King entered the cell, Thompson appeared to be asleep. However, it was determined that he was not breathing, and he was cool to the touch. Sergeant Ed Bush was called, and he was on the scene, together with other officers. He also confirmed coolness to the touch, lack of respiration, and unresponsiveness. Corporal Tammy Pendergrass immediately notified MEDTRAN, and they arrived in a matter of minutes. After their first-responder protocol, they left with the body at 9:31 p.m. Thompson was pronounced dead at Saline Memorial Hospital shortly thereafter. This lawsuit was filed some two-and-a-half years later.

## Standard of Review

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The Court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). A moving party is entitled to summary judgment if the nonmoving party has failed to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex,* 477 U.S. at 322-23. The Eighth Circuit has held that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Dulany v. Carnahan,* 132 F.3d 1234, 1237 (8th Cir. 1997) [quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)].

**Deliberate Indifference and Proximate Causation**

No Defendant can be said to have engaged in deliberate indifference in this case. The definition of deliberate indifference is settled. The best working definition appears in *Pietrafeso v. Lawrence County, South Dakota*, 452 F. 3d. 978 (8th Cir. 2006). *Pietrafeso* quotes from *Moore v. Briggs*, 381 F. 3d, 771,773-74 (8th Cir. 2004), which in turn quotes *Farmer v. Brennan*, 511 U.S. 825, 837 (1994):

> To define deliberate indifference for these purposes, the Supreme Court has adopted the criminal law subjective standard of recklessness — "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Moore v. Briggs*, 381 F. 3d 771, 773-74 (8th Cir. 2004), quoting *Farmer v. Brennan*, 511 U.S. 825 (1994).

*Pietrafeso* at 982-3 . . . ."deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions." *Gibson v. Weber*, 433 F. 3d 642, 646 (8th Cir. 2006).

No one in this case engaged in deliberate indifference. In particular, Ulenzen King, who had the most contact with Thompson, did what any booking officer would probably do. In a year's time, thousands of detainees are brought to SCDF in an intoxicated state. In this particular case, although he was too intoxicated to sign the Booking Sheet, he was not too intoxicated to give King details of his medical condition. King was adept enough to discern that the intoxication which caused Thompson to want to sit in a chair was brought on by the Dilantin which Thompson said (mistakenly) that he had taken because he was seizure-prone. That information is in the Medical Booking Sheet (Exhibit C-3). King was not engaging in conduct which would constitute a "criminal law subjective standard of recklessness." Just as he and his fellow jailers had done with thousands

of intoxicated detainees, he put Thompson in a holding cell with a blanket. That conduct does not constitute deliberate indifference. It should be noted that it is the opinion of King's trained and experienced superiors, Sheriff Mask, Sheriff Pennington, Hugh Gentry, and Lieutenant Frost, that nothing which he or anyone else did constituted deliberate indifference. Exhibits D, E, F, and H.

Plaintiff has conducted no discovery. In her mandatory disclosures, she has not identified a witness that will establish that anyone on the staff of the SCDF on December 18, 2008, engaged in deliberate indifference with respect to the death of Johnny Dale Thompson.

No Defendant in this case engaged in conduct which was a direct[2] cause of Johnny Dale Thompson's death. The direct cause of Thompson's death was his ingestion of a variety of drugs, particularly Hydrocodone, at a toxic level. Autopsy report, Exhibit A.

It is necessary to list each Defendant to explore whether they engaged in conduct that directly and proximately caused the death of Thompson, and whether that conduct was intentional, knowing, or reckless in the criminal law context, requiring actual knowledge of a serious risk. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Wilson v. Seiter*, 501 U.S. 294 (1991).

### Phil Mask

As is apparent from his affidavit, Phil Mask did not engage in deliberate indifference, nor did he engage in any conduct which caused the death of Thompson. He had already left the Department to make way for the incoming Sheriff, and knew nothing of this incident until he was served with the Summons and Complaint. Plaintiff has not produced, and cannot produce, a witness that will testify that Phil Mask did anything even approaching conduct constituting deliberate indifference.

---

[2]See Model Instruction 4.31, Eighth Circuit Manual of Model Jury Instructions-Civil (2011).

### Bruce Pennington

This Defendant was not Sheriff at the time of the incident, and was not even working for SCDF. He has since learned of the incident through his examination of the report, and gives his opinion, based on education and training, that no one engaged in deliberate indifference on the night of December 18, 2008.

### Hugh Gentry

The same can be said for Hugh Gentry, who, as a Jail Administrator, is familiar with deliberate indifference and gave the opinion in his affidavit that no such conduct was engaged in by his staff.

### Ray Pennington

Although named as a Defendant in this matter, his name appears nowhere in the text of the Complaint, nor is he referred to by any other reference in the Complaint. He should be dismissed out-of-hand.

### Tammy Pendergrass

When Thompson was found in the cell cold, not breathing, and nonresponsive, Tammy Pendergrass was instructed to call an ambulance, and she did so. This is her sole involvement in this matter.

### Mike Frost

Lieutenant Frost heads the Criminal Investigation Division, which has nothing to do with SCDF. He should not be a Defendant in this matter. He did not engage in any conduct whatsoever touching on direct causation with regard to the death of Thompson.

### Ed Bush

As a Sergeant on duty on the night of December 18, 2008, he was notified of the situation, and did what he should have done. He directed Pendergrass to call an ambulance. He did not engage in any conduct whatsoever causing the death of Thompson.

### Ulenzen King

His conduct has been discussed in some detail. He put Thompson in the jail cell because he was intoxicated, and he did so the same way he had done on innumerable occasions with other individuals who were intoxicated. He did not know, nor did he have any way of knowing, the extent to which Thompson had ingested drugs, so as a matter of law, his conduct does not meet the deliberate indifference standard.

### Stephen Furr and James Hall

The conduct of these officers was exemplary. In fact, they were hardly mentioned in the Complaint. They did what they should have done, and in so doing, did not cause the death of Thompson.

For the reasons stated above, the Court should find that the conduct engaged in by the Defendants did not constitute deliberate indifference, nor did it cause the death of Thompson.

### Arkansas Civil Rights Act

Plaintiff also brings this action invoking the supplemental jurisdiction of the Court alleging a violation of the Arkansas Civil Rights Act of 1993.

In previous cases, the question arose whether Arkansas's conscious-indifference standard afforded greater protection to pre-trial detainees than the federal deliberate-indifference standard. The Eighth Circuit had occasion to certify that question to the Arkansas Supreme Court. In *Grayson*

*v. Ross*, 483 F. 3d 887 (8th Cir. 2007), the Arkansas Supreme Court answered the certified question, and it is now the law of the Eighth Circuit that the standards are the same. *Grayson*, 483 F. 3d at 888-9. Therefore, summary judgment in favor of Defendants with respect to the federal deliberate indifference standard will produce the same result in an action brought under the state statute, making this count moot.

## Wrongful Death Action Under State Law

Count Three, Wrongful Death Action Under State Law, is ambiguous with respect to relief. It makes reference to both federal and state law. It also seems to be a negligence count. Negligent conduct by government officials cannot be the source of a deprivation of constitutional rights for § 1983 purposes. *Daniels v. Williams*, 474 U.S. 327 (1986); *Wells v. Walker*, 852 F. 2d 368 (8th Cir. 1988).

If in this count, Plaintiff is looking to the Arkansas Civil Rights Act to assert a deliberate indifference claim (see paragraph 86) the standard of proof under the state act is the same as it is under federal law. *Grayson v. Ross*, 483 F. 3d 887 (8th Cir. 2007).

For these reasons, Plaintiff cannot prevail under this count.

## Qualified Immunity

The Personal Representative of the Estate of Johnny Dale Thompson is Elaine Thompson, the deceased's mother, and when her deposition was taken, she was unable to give a reason why most of the Defendants were even named (Exhibit B). She did single out Mr. King, former Sheriff Mask, and the present Sheriff, Bruce Pennington. That said, when the allegations of the Complaint and the affidavits of the parties are examined, these Defendants are clearly shielded by the doctrine of qualified immunity.

As the Court is well aware, qualified immunity originated in the now-famous case of *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), holding that in order to overcome qualified immunity, the plaintiff must demonstrate that the defendant caused injury and damages to plaintiff by depriving the plaintiff of a clearly established constitutional right. Such is not the case in this litigation.

Qualified immunity is analyzed in two steps. The analysis is well explained in *Robinson v. White County, Arkansas*, 452 F. 3d, 706, 710 (8th Cir. 2006):

> First, we ask whether the facts as asserted by the plaintiff show the officer's conduct violated a constitutional right. If the answer is no, we grant qualified immunity. If the answer is yes, we go on to determine whether the right was clearly established. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Id*. at 710 (quoting *Wright v. Rolette County*, 417 F. 3d 879, 884 (8th Cir. 2005).[3]

First, Thompson's constitutional rights were not violated. There is absolutely no doubt in anyone's mind that, had Ulenzen King known then what he knows now, he might have done things differently. However, he was not intentional or reckless, as the deliberate indifference standard dictates. *Farmer v. Brennan, supra*.

Second, even if there was a difficult-to-define constitutional right which was violated, the right was not clearly established because it would have been unclear to a reasonable officer that such conduct was unlawful in the situation he confronted. In other words, Ulenzen King did not violate Thompson's constitutional rights, but even if he did, it was not a right which was clearly established as of December 18, 2008.

---

[3] This analysis is also discussed in *Grayson v. Ross*, 454 F. 3d 802 (8th Cir. 2006). *Grayson* also quotes *Robinson*.

The same is even more true for the other Defendants in this case. Many of the Defendants had little or no contact with Thompson, so it cannot be said that they violated Thompson's constitutional rights.

Qualified immunity has been summed up quite succinctly as follows: Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines. *Jones v. Minnesota Department of Corrections*, 512 F. 3d 478, 484; *Vaughn v. Greene County, Ark.*, 438 F. 3d 845, 852 (8th Cir. 2006). In this case, no Defendant crossed a bright line, and indeed, did not even engage in a bad guess. All of the Defendants are shielded by qualified immunity, and this litigation should be dismissed as against all Defendants.

## Conclusion

Because none of the Defendants engaged in conduct constituting deliberate indifference, because none of the Defendants directly or proximately caused the death of Johnny Dale Thompson, and because all of the Defendants are entitled to qualified immunity, the Court should grant summary judgment in favor of Defendants.

Respectfully submitted,

/s/ George D. Ellis
GEORGE D. ELLIS (Ark. Bar No. 72035)
Attorney for Defendants
Ellis Law Firm, P.A.
126 North Main Street, P.O. Box 2307
Benton, Arkansas 72018
(501) 315-1000 (telephone)
(501) 315-4222 (fax)
*gellisinbenton@swbell.net*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on the 24th day of April, 2012, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all parties in interest.

           /s/ George D. Ellis
           GEORGE D. ELLIS