## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

ELAINE THOMPSON, INDIVIDUALLY AND                               PLAINTIFFS
AS PERSONAL REPRESENTATIVE OF THE ESTATE
OF JOHNNY DALE THOMPSON, JR., DECEASED

v.                          NO. 4:11-CV-0379BSM

SALINE COUNTY SHERIFF PHIL MASK, INDIVIDUALLY AND
AS FORMER SHERIFF OF SALINE COUNTY, ARKANSAS; et al        DEFENDANTS

### PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S
### RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### PLAINTIFF'S INTRODUCTION

This Court has the authority to not only rule on Defendant's Motion for Summary

Judgment, but to also grant Plaintiff Summary Judgment on its own. *See Fed. Rules Civ. Proc.*

*Rule 56 (f).* Plaintiff's Complaint states a cause of action against the Defendants' individually

and as representatives of the government entity of Saline County, Arkansas. Defendants'

attorney represents all Defendants in both capacities and the affidavits procured in support of the

motion for summary judgment are from party opponents. Plaintiff's Complaint sets forth facts

stating an obvious causal relationship between the deliberately indifferent acts and omissions of

the jailers, supervisors and administrators, policy makers, and legislators of Saline County and

the Plaintiff's and others deaths or damages. Plaintiff's factually detailed complaint describes

the unconstitutional conduct by the Defendants, including Saline County, from acts both in and

outside the walls of the Saline County Detention Center (hereinafter referred to as "jail"). The

Complaint states facts alleging individual's conduct in the furtherance of a wide spread custom,

policy, and a systemic pattern of deprivation of constitutional rights to persons incarcerated in

the jail which resulted in Plaintiff's needless death on December 18, 2008. The Complaint

accurately portrays a long-term history, through two different jail administrations, of a continuing pattern and systemic deprivation basic medical assistance to incarcerated persons, including Plaintiff, who have suffered from obvious, serious medical conditions.  Therefore, there is a sufficient factual basis stated and supported by admissible evidence for finding the existence of systemic unconstitutional conduct by Saline County.

**PLAINTIFF'S SUPPLEMENT TO DEFENDANT'S STATEMENT OF FACTS**

Defendants' counsel omitted several important facts in his brief, which are set-forth in Plaintiff's Complaint.  These facts are supported by admissible evidence provided from and to Defendants' counsel by Plaintiff's FOI requests and investigation, and the facts stated in Plaintiff's Complaint are necessary for a summary judgment analysis.  Without repeating all the detailed facts stated in the complaint, Plaintiff believes the following are a necessary supplement to the Defendants' summary of the facts, as follows:

1.  The jail has been understaffed since it opened, especially in regards to a qualified medical staff and properly trained personnel regarding medical issues, including at the time of Plaintiff's death on 12/18/2008, and afterwards.  (See the allegations in paragraphs 61 through 64, and Exhibit " B " to Plaintiff's Complaint, containing the *Minutes of the Saline County Quorum Court* including the state law jail standards required annual report of *9/10/2008 Detention Facility Compliance Report.*  At page 235, the report stated affirmatively that *"...each employee completed the basic jail course."*  However, the report then answered *"no"* to the question *"Does the facility have sufficient personnel?";  "no"* again on page 237;  and *"yes"* to the question "*Is there a medical training program such as C.P.R. and first aid or a suitable alternative?"* on page 238.  At the end, on page 241, the relevant conclusions were that the jail had "insufficient staff to man shifts properly and to provide adequate security for staff &

inmates;"… "Jail has nice med. Infirmary but no personnel to staff or use it"; that then had a jail population of 155 inmates; and ends with the statement, "This Jail is badly understaffed!"

Copies of **Mandatory Jail Inspection Reports for the years of 2007 through 2008, attached hereto as Exhibits 1 and 2** verifying the annual admission of systemic lack of staffing at the jail since it opened.  But in spite of the problem, Saline County allowed the population to increase from 64 in 2007 to 155 in 2008, while cutting back on medical services.

2.  The Sheriff and Saline County refused to continue to fund the cost of a part time medical doctor and full time registered nurse that had previously acted as medical needs gatekeepers and at the jail, which left the jail administration admittedly unprepared to reasonably respond to those needs. (see **Exhibit** 3 – August 27, 2008 Benton Courier newspaper article quotes and paragraph 61of Plaintiff's Complaint).

3.  The Saline County Sheriff's Office admitted to the Saline County Quorum Court and Saline County Judge that the jail staff was not qualified to handle medical issues at the jail.  (See paragraph 61of Plaintiff's Complaint and  **Exhibit 3**   attached hereto - admissions and declarations against interests made by the Saline County Sheriff's Office representative during a Saline County Quorum Court session and quoted in the Saline Courier newspaper on August 27, 2007).

4.  Thirty days before Plaintiff's  December 18, 2008,  jail death, Plaintiff had completed a prior sentence in the jail in an effort to fully satisfy all his past fines liability to Saline County by serving his time in the jail.

5.  During that incarceration period, the jail staff gave Plaintiff his prescription medications, was aware of Plaintiff's seizure disorder, and had fully interviewed Plaintiff about his medical history.

6.  During the Plaintiff's prior incarceration, the Plaintiff was transported to the emergency room for a head laceration he sustained from a fall after having a seizure.

7. As Defendant stated, on December 18, 2008, police stopped a vehicle for an inoperable taillight, in which Plaintiff Johnny Dale Thompson was a back seat passenger, and took him to jail.  It is unknown when Plaintiff ingested a quantity of drugs, and what is omitted from the Defendants' version of the facts is that the arresting officer found an empty prescription medicine bottle in Plaintiff's from shirt pocket, put it in an evidence bag, and delivered it to the jail when he handed Plaintiff over to the jailer, Defendant Ulenzin King.  The empty prescription bottle displayed a prescription date of December 15, 2008, approximately 2 or 3 days earlier, and was in the name of the Plaintiff for 60 pills of the narcotic medicine Alprazolam ("Xanax"). (**See Plaintiff's <u>Exhibit</u> 4 - copy of Plaintiff's written prescription from the Arkansas State Police Death Investigation Report, (a portion of which is also attached to Defendants' Motion for Summary Judgment as "D-2" document 19-4), and see Plaintiff's Complaint at paragraph 27).**

8.  The Saline County Sheriff's Office and Arkansas State Police interviewed other inmates who personally observed Plaintiff's obviously serious medical condition during Defendant King's attempt to interview Plaintiff and later.  (See **<u>Exhibit 5</u>** - **Affidavit of Bobby D. Harrison,** who witnessed the attempted interview and other events as stated in his affidavit).

9.  The medical examiner's report shows death to be accidental from multiple drug intoxication.

10.  Defendant Stephen A. Furr, one of the Plaintiff's two arresting officers, prepared a signed statement to the Arkansas State Police, which is more extensive than the statement attached as Defendant's Exhibit J-1 to the summary judgment motion.  Furr's expanded

statement confirms that (a) Plaintiff's empty Xanax prescription pill bottle was found in Plaintiff's front pocket; (b) the prescription was filled two days earlier for 60 pills; (c) Plaintiff told Furr he had taken medication; (d) Furr left Plaintiff at the jail, but returned to the jail to "assist with a DWI arrest" and was present in the "BAC machine area" when Plaintiff was discovered unresponsive and presumed dead; and (e) there is no mention of anyone ever performing an alcohol or drug test, or CPR on the Plaintiff.  (see **Exhibit 6** - Furr's handwritten, signed statement with typed copy attached).

11.  That in 2008 there were three jail deaths at the jail and a fourth in 2011.  (See attached **Exhibits A-1 and A-2 attached to Plaintiff's Complaint).**

12.  That the Saline County Sheriff's web page states the County has now hired a medical services contractor and currently reports that the jail staff has now helped save four lives in the last four months  by administering CPR and performing an emergency medical protocol to unconscious inmates. (See **Exhibit 7 & 8**- attached excerpts from Saline County Sheriff's website).

13.  The party affidavits that the Defendants attached in support of summary judgment, and other evidence, confirms that at no time did any Saline County Sheriff's Office employee perform CPR or any other life saving measures on the Plaintiff.  However, the subsequently arriving Benton Rescue and paramedic Jeff McClain immediately performed life-saving measures and never ceased CPR and other measures until Plaintiff was pronounced dead at the hospital.  (See the affidavits attached to Defendants' motion, and the handwritten, signed statement of arresting Deputy Drew Furr;  and attached **Exhibit 9**   - Affidavit of Jeff McClain, paramedic a board ambulance called for Plaintiff)

**DELIBERATE INDIFFERENCE AND PROXIMATE CAUSATION**

All the Defendants in this case should be found to be deliberate indifferent to Plaintiff and other detainees who have had the unfortunate luck to be incarcerated in the Saline County Jail with a serious medical need.  All the Defendants have crossed the line by their direct conduct or direct omission with the Plaintiff ;  or by acting in concert in the systemic pursuant to an official custom or policy of the County. *SeeMonell v. Dep't of Social Servs., 436 U.S. 658, 690-91 & n.55 (1978)* (plaintiff seeking to impose § 1983 liability on local government body must show official policy or widespread custom or practice of unconstitutional conduct that caused deprivation of constitutional rights); and *Berryhill v. Schriro, 137 F.3d 1073, 1077 (8th Cir. 1998);* or both.

The case at bar is very factually similar to **McRaven v. Sanders**, *577 F.3d 974 (8th Cir. 2009.* **McRaven** involved an intoxicated Garland County Jail detainee who, when arrested, had 21 of his 91 prescription muscle relaxers were missing from his prescription bottle which had been issued the day before, and it was undetermined how many the arrestee had taken.  Certain factual disputes existed on what type of individual conduct occurred by the defendant's, and the Eighth Circuit held that when "Reviewing a qualified immunity motion, this court takes the facts as asserted by the party claiming injury." **Serna v. Goodno**, 567 F.3d 944, 951-52 (8th Cir. 2009), *citing* **Saucier v. Katz**, 533 U.S. 194, 201 (2001), *abrogated in part on other grounds*, **Pearson v. Callahan**, 129 S.Ct. 808, 818 (2009).

The Court went on to state that:

"Deliberate indifference has both an objective and a subjective component." **Vaughn v. Gray**, 557 F.3d 904, 908 (8th Cir. 2009). "The objective component requires a plaintiff to demonstrate an objectively serious medical need." **Id.** "The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." **Id.**  "In a § 1983 action, state actors may be entitled to qualified immunity." **Riehm v. Engelking**, 538 F.3d 952, 962 (8th Cir. 2008). "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" **Id.**, *quoting* **Malley v. Briggs**, 475 U.S. 335, 341 (1986). "To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the

light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." ***Howard v. Kansas City Police Dep't.***, 570 F.3d 984, 988 (8th Cir. 2009). This court exercises its "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." ***Id.***, *quoting* ***Pearson***, 129 S.Ct. at 818.

The Court then examined each Defendant who had been denied qualified immunity by the District Court by noting the following factors:

1. An intentional delay in providing medical treatment shows deliberate disregard if a reasonable person would know that the inmate requires medical attention or the actions of the officers are so dangerous that a knowledge of the risk may be presumed." ***Gordon ex rel. Gordon v. Frank***, 454 F.3d 858, 862 (8th Cir. 2006).   In the ***Gordon*** case, the Defendant was not even allowed to rely on another person's medical opinion that that the detainee was drunk when had common sense dictated that under the circumstances, the behavior of the detainee indicating extreme intoxication, and other facts including the type of drugs that are suspected to have been ingested, based on the circumstances.

2.  Whether an officer with more knowledge of the suspected drug ingestion failed to inform another person in the jail capable of making the decision on immediate treatment.

3.  Whether there was a means to test blood alcohol levels to determine if it was alcohol intoxication and if so, was it to a level of alcohol poisoning.

4.  Whether anyone trained in CPR failed to perform CPR.  An officer trained in CPR, who fails to perform it on a prisoner manifestly in need of such assistance, is liable under § 1983 for deliberate indifference. ***Tlamka v.Serrell***, 244 F.3d 628, 633 (8th Cir. 2001).

## SALINE COUNTY LIABILITY

To hold the County liable under section 1983, the plaintiff would have to show that the action that is alleged to be unconstitutional implements or executes an official policy of the

County or that the action was taken pursuant to a custom or practice that is so widespread as to have the force of law. *Marchant v. City of Little Rock*, 741 F.2d 201, 204 (8th Cir. 1984).

The undisputed facts establish that Saline County has refused to fund repeated requests by the Saline County Sheriff's Office to make sure serious medical needs of detainees and inmates are being met. The Sheriff's administration has admitted that the jail was untrained to take care of the reasonable medical needs of the prisoners in the quotes from the newspaper previously discussed. The Saline County Detention Inspection Reports for 2007 and 2008 also admitted inadequate jail staffing generally and especially in the medical issues. (See **Exhibit**s 1 & 2) However, even with the County Quorum Court's refusal to respond, the Sheriff continued to operate and increase the population of the jail and actually requested, the County government approved an ordinance to use balance of the earmarked jail medical funds of $13,600 to buy an automobile. (See **Exhibit C-Attached to Complaint Ordinance passed on 11/17/2009**). The Plaintiff contends that these described policies and customs regarding medical care were inadequate. The Plaintiff contends that the jail did not have a sufficient number of medically trained staff.

The record in this action shows multiple incidents of alleged deliberate indifference to serious medical needs at the Saline County jail. This is sufficient to establish a pattern of persistent and widespread practices that have become so permanent and well settled as to have the effect and force of law. *Szabla*, 486 F.3d at 392-93. There is evidence of a pattern of constitutional violations making it 'obvious' that additional training or safeguards were necessary. A governmental custom involves 'a pattern of 'persistent and widespread' . . . practices which become so 'permanent and well settled' as to have the effect and force of law. (quoting *Doe v. Special Sch. Dist.*, 901 F.2d 642, 646 (8th Cir.1990).

There were three deaths at the Saline County Jail in 2008, including Plaintiff's,

and a fourth death on April 13th, 2011. (See **Exhibits** 10 & 11 - newspaper accounts of deaths).

Also, in the pending case of ***James Grundon vs. Sheriff Pennington, Lt. Pennington,***

***and Cpl. Hart of the Saline County Jail, Individually and Officially***;  U.S.Dist. Ct. No. 4-10-

CV 2017 JMM/HDY, the Plaintiff has alleged deliberate indifference because of delayed

treatment of Plaintiff's serious medical need.  (See **Exhibit 12** - Affidavit of James E. Grundon)

The admissibility of prior similar occurrences has been commonly accepted in Arkansas

for many years. *See **Ford Motor Co. v. Massey**,* 313 Ark. 345, 855 S.W.2d 897 (1993); ***Westark***

***Specialties, Inc. v. Stouffer Family, Ltd**.,* 310 Ark. 225, 836 S.W.2d 354 (1992); ***Fraser v.***

***Harp's Food Stores, Inc.,*** 290 Ark. 186, 718 S.W.2d 92 (1986); ***Carter v. Missouri Pacific***

***Railroad Co.,*** 284 Ark. 278, 681 S.W.2d 314 (1984).  In addition, it is generally recognized that

evidence of prior similar occurrences is admissible with a showing of sufficient similarity in

circumstances. *See **McCormick on Evidence**,* 5th ed. 1999 p. 703-04 § 200.

In ***Cleveland-Perdue  vs. Brutche, M.D**.,*  881 F.2d 427 (5th Cir. 1989); the Court held

that after reviewing the relevant case law, it is clear that a prison official's failure to remedy

systemic deficiencies in medical services akin to those alleged in the present case constituted

deliberate indifference to an inmate's medical needs.  ***Newman v. Alabama*** In, 503 F.2d 1320

(5th Cir.1974), cert. den. 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975), the Fifth Circuit

affirmed a district court decision finding that systemic deficiencies in the Alabama prison system

violated inmates' eighth amendment rights. Among the deficiencies that district court noted were

inadequate staffing, treatment by unqualified personnel, incomplete medical records and lack of

written procedures establishing the duties and responsibilities of the medical personnel--charges

that were made against the Terre Haute prison. In affirming the district court's entry of injunctive

relief, the court explicitly stated that systemic deficiencies of this type, "present grave constitutional problems." 503 F.2d at 1331.

In *Bishop v. Stoneman*, 508 F.2d 1224, 1226 (2nd Cir.1974), the court, faced with evidence of several disturbing incidents over a short period of time, explicitly asserted that a claim that "medical facilities were so wholly inadequate for the prison population's needs that suffering would be inevitable" is cognizable under section 1983. Moreover, the Eighth Circuit took the same view.

In *Finney v. Arkansas Board of Corrections*, 505 F.2d 194, 202 (8th Cir.1974), a class action suit against high state prison officials the court recognized that systemic deficiencies in the administration of medical services are of constitutional significance. These deficiencies included absence of a full-time physician at frequent intervals, unsatisfactory record-keeping and, most troubling to the court, inadequate emergency procedures.

Arkansas Code Annotated §16-62-103 makes the successor Defendant Sheriff Pennington liable for actions taken by previous Defendant Sheriff Mask even though apparently Mask had quit his job at the time of Plaintiff's death before Pennington took over. (See paragraph 8 of Plaintiff's complaint and Mask and Pennington's affidavits attached to Defendants' motion for summary judgment).

## CONCLUSION

Given the amount litigation, the nature and volume of the injuries, the indifference of the employees and county legislative body , the deaths within a relatively short time frame, and admissions by county officials of their continuing problems and inability to provide reasonable medical treatment needs of those incarcerated at the Saline County Jail, there is sufficient factual evidence of deliberate indifference and causation in Plaintiff's claim to survive Defendants'

pending motion for summary judgment.  Both the individual actions of the Defendants and the

systemic, unconstitutional policy and custom of the Defendant Saline County government should

remain actionable in this case.

Respectfully Submitted:

/s/G. Randolph Satterfield
    G. Randolph Satterfield, Ark. Bar 81140
    Satterfield Law Firm, PLC
    P.O. Box 1010
    Little Rock, Arkansas  72203-1010
    Telephone: (501(501) 376-0411
    Facsimile:  (501) 374-2834

**CERTIFICATE OF SERVICE**

I, G. Randolph Satterfield, do hereby certify that I have mailed a copy of the above and foregoing with sufficient postage thereon to George D. Ellis, Attorney at Law, 126 North Main Street, P.O. Box 2307, Benton, Arkansas 72018, on this 29th  of May, 2012.

/s/ G. Randolph Satterfield
    G. Randolph Satterfield