IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**ELAINE THOMPSON, individually**                               **PLAINTIFF**
**and as personal representative of the**
**estate of Johnny Dale Thompson, Jr.**

**v.**                 **CASE NO. 4:11CV00379 BSM**

**PHIL MASK et al.**                                                        **DEFENDANTS**

## ORDER

Defendants' motion for summary judgment [Doc. No. 19] is granted as to the claims against defendants Phil Mask, Bruce Pennington, Hugh Gentry, Ray Pennington, Tammy Pendergrass, Mike Frost, Ed Bush, James Hall, and Saline County, Arkansas, and denied as to the claims against defendants Ulenzen King and Stephen Furr.

### I. BACKGROUND

Viewed in the light most favorable to plaintiff Elaine Thompson, the non-moving party, the undisputed facts are as follows. On December 18, 2008, at approximately 6:20 P.M., Johnny Dale Thompson, Jr., ("Johnny") was a passenger in a vehicle stopped by defendants Stephen Furr and James Hall, deputy sheriffs of Saline County, Arkansas. Plaintiff's Statement of Disputed Facts [Doc. No. 28] ("Pl's SOF"), ¶ 1. The deputies arrested Johnny when they discovered he had an outstanding warrant in Bauxite, Arkansas. *Id.* at ¶¶ 1-2. Furr placed Johnny in the patrol car and drove him to the Saline County jail. *Id.* Johnny slept on the ride over but was easily awakened by Furr upon arrival. *Id.*

Johnny was booked by jailer Ulenzen King. *Id.* at ¶ 3. Johnny was intoxicated, his

speech was slurred, and he had to ask for a chair to sit down. *Id.*; Brief in Support of Defendant's Motion for Summary Judgment [Doc. No. 20] ("Brief in Supp. of Def's MSJ") at pg. 2. King had trouble keeping Johnny awake and had to slap the counter to get his attention. *Id.* Johnny completed the booking process and was placed in a cell at 7:42 P.M. Pl's SOF ¶ 4. At approximately 9:09 P.M., King brought a Bauxite officer into the cell to serve the outstanding warrant. *Id.* at ¶ 5. They found Johnny cool to the touch, not breathing, and non-responsive. *Id.* An ambulance was called and Johnny's body was taken to the Saline Memorial Hospital at 9:31 P.M. *Id.* at ¶ 6. The autopsy report shows Johnny died from ingesting drugs, including Hydrocodone, at a toxic level. *Id.* at ¶ 7. The medical examiner ruled the death as accidental. *Id.* at ¶ 8.

Johnny's mother, plaintiff Elaine Thompson, filed this lawsuit against numerous Saline County officials and the county itself, alleging constitutional violations under 42 U.S.C. § 1983, and state law violations under the Arkansas Civil Rights Act and wrongful death law. Defendants now move for summary judgment, claiming qualified immunity, among other things.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Nelson v. Corr. Med. Servs.*, 533 F.3d 958, 961 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008)). "A dispute is genuine if the evidence is such that it could

cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Flores v. United States*, 689 F.3d 894, 902 (8th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of her pleadings, but her response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In considering a motion for summary judgment, all reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter,* 540 F.3d 742, 750 (8th Cir. 2008).

### III. DISCUSSION

Thompson asserts that the individual defendants violated Johnny's substantive due process rights by manifesting a deliberate indifference to his serious need for medical

3

attention. Thompson further alleges that the county is liable because the deliberate indifference of its employees is attributable to an official county policy, a widespread practice or custom, and/or deliberately indifferent training. Summary judgment is granted on all claims except for the claims against King and Furr.

A.     Section 1983 Individual Capacity Claims

The individual defendants, who are county officials, seek qualified immunity on all of Thompson's 42 U.S.C. section 1983 claims. To overcome qualified immunity, Thompson must show that: (1) the alleged conduct violated a constitutional right; and (2) the right violated was clearly established "so that a reasonable official would understand that what he is doing violates that right." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006) (quotations and citation omitted).

Under the first prong, to establish a violation of Johnny's substantive due process rights, Thompson must raise a genuine issue of material fact as to whether defendants manifested a deliberate indifference to his serious medical needs. This standard has both an objective and a subjective component. *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir.2009). "The objective component requires a plaintiff to demonstrate an objectively serious medical need." *Id.* "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Jones v. Minnesota Dept. Of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008) (quotations and citation omitted). "The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded,

4

such need." *Vaughn*, 557 F.3d at 908. An official's subjective knowledge may be inferred from the record and "is subject to proof by all the usual ways, including inferences based on the obviousness of the [health] risk." *Gregorie v. Class*, 236 F.3d 413, 417 (8th Cir. 2000).

If Thompson is able to raise a genuine factual dispute as to deliberate indifference, she must then overcome the second prong of qualified immunity. This requires her to produce a genuine issue of material fact as to whether the right violated was clearly established "so that a reasonable official would understand that what he is doing violates that right." *Gordon ex rel. Gordon*, 454 F.3d at 862. On this point, the defendants argue that "[t]here is no settled constitutional right to have the continual presence of jailers to protect intoxicated prisoners from themselves." [Doc. No. 36] at pg. 5. This statement, however, misconstrues the claims made by Thompson and also neglects the well settled principle that "having stripped [prisoners] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Furthermore, notwithstanding defendants' argument, it was indeed well established prior to Johnny's death that deliberate indifference to the needs of pre-trial detainees violates the Constitution. *See id.; Gregorie*, 236 F.3d at 417 ("It is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs."); *Crow v. Montgomery*, 403 F.3d 598, 601 (8th Cir. 2005) (Eighth Amendment deliberate-indifference standard applies to claims of pretrial detainees made under the Fourteenth Amendment).

Therefore, for purposes of summary judgment, the application or denial of qualified immunity turns on whether there is a genuine issue of material fact as to (1) whether Johnny Thompson had an objectively serious need for medical attention that defendants subjectively knew of but deliberately disregarded, and (2) if so, whether defendants could have reasonably believed that their response was not unlawful. *See Gregoire*, 236 F.3d at 416-18. "If there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment." *Lambert v. City of Dumas*, 187 F.3d 931, 935 (8th Cir. 1999).

*1. Jailer Ulenzen King*

Thompson has produced evidence that raises a genuine issue of material fact as to whether defendant Ulenzen King, the jailer who booked Johnny at the detention facility, is entitled to qualified immunity.

a.      Violation of a Constitutional Right

Beginning with the objective component of deliberate indifference, there is a genuine factual dispute as to whether Johnny's need for medical attention was obvious to a layperson in King's position so as to be "objectively serious." *See Jones*, 512 F.3d at 481 (absent medical evidence, an objectively serious medical need is one which would be obvious to a layperson). The undisputed record indicates that while Johnny was being booked, he was slipping in-and-out of consciousness and appeared highly intoxicated. Pl's SOF ¶ 3. He had to sit in a chair; he leaned forward in the chair as if he was going to fall; and King had to slam his hand on the desk to keep him awake. *Id.*; [Doc. No. 19-3] at pg. 1, 3 (Ulenzen

6

King's Affidavit and Incident Report).  Bobby Harrison, another detainee who witnessed Johnny being booked, states that Johnny "was unable to talk very well and was mumbling" and that "[h]e knew and anyone else who saw [Johnny's] condition would have known, that [Johnny] had a serious medical need and that he needed medical attention." [Doc. No. 30] at pgs. 23-25 (Affidavit of Bobby D. Harrison).  In addition to the visible signs of serious intoxication, King admits that Johnny told him he had taken Dilantin, which Johnny was prescribed because he suffered from seizures. [Doc. No. 19-3] at pgs. 1, 3. Under these facts and considering that Johnny indeed died in his prison cell from overdosing on prescription medication, there is a genuine factual dispute as to whether a layperson in King's position would have recognized that Johnny had a serious need for medical attention.

 As to the subjective component of deliberate indifference, there is also a genuine factual issue concerning whether King was subjectively aware of Johnny's serious medical need but deliberately disregarded it. First, a reasonable juror could infer from the aforementioned facts regarding the obviousness of Johnny's need for medical attention that King was actually aware of that need. *See, e.g.*, *Gregoire*, 236 F.3d at 417 (an official's subjective knowledge "is subject to proof by all the usual ways, including inferences based on the obviousness of the risk"). Second, King admits that he believed Johnny was highly intoxicated on pills. In the incident report, King writes that Johnny "couldn't sign any of his paperwork because *he appeared too intoxicated on pills* (dilantin) to sign." [Doc. No. 19-3] at pg. 3 (emphasis supplied).  King affirms this in his affidavit by stating that Johnny "was unable to sign the Booking Sheet because of his intoxication" such that King had to write

7

"Too Intox to Sign" on the sheet. *Id.* at pg. 1. These statements confirm that King was subjectively aware that Johnny was highly intoxicated on prescription medication.

There is also a genuine factual dispute as to whether King deliberately disregarded Johnny's need for medical attention. It is undisputed that after the booking process, King left Johnny in a cell. The first time King checked on him was approximately thirty minutes later, at which time Johnny was found dead. Pl's SOF ¶¶ 4-5. Detainee Bobby Harrison states that at one point during that thirty minutes, he heard Johnny "sliding down the glass window of his jail cell." [Doc. No. 30] at pg. 24. He then heard King go to Johnny's cell like he was going to do something, but he did nothing. *Id.* Instead, King said he needed to go somewhere, and he left Johnny in the cell. *Id.* Harrison also states that he yelled at King through his cell door, telling him that Johnny needed help, but King ignored him. *Id.* Finally, Harrison claims that he "saw and heard the jailers in the jail laughing after they knew [Johnny] was dead." *Id.* For summary judgment purposes, these facts are sufficient to raise a genuine issue for trial as to whether King manifested deliberate indifference to Johnny's serious need for medical attention. *See, e.g., Gordon ex rel. Gordon*, 454 F.3d at 862 ("Intentional delay in providing medical treatment shows deliberate disregard if a reasonable person would know that the inmate requires medical attention.").

  b. Clearly Established

The second prong of the qualified immunity test requires Thompson to show that a reasonable officer in King's position would believe that his actions were unlawful. The record shows that Johnny's need for medical attention was obvious, that King knew Johnny

8

had taken prescription medication, thought Johnny appeared highly intoxicated on pills, and ignored statements from Harrison that Johnny needed help. These facts raise a genuine dispute as to whether a reasonable officer in King's position would have believed that disregarding Johnny's need for medical attention and leaving him in his cell unattended was lawful. Because there is a genuine issue of fact as to both prongs of qualified immunity, summary judgment is denied as to the Section 1983 claims against King in his individual capacity.

### *2. Deputy Stephen Furr*

The record also raises a genuine issue of material fact as to whether defendant Stephen Furr, the deputy sheriff who arrested Johnny and transported him to the Saline County Detention Facility, is entitled to qualified immunity.

    a.    Violation of a Constitutional Right

First, there is a genuine factual dispute as to whether Johnny's need for medical attention would have been obvious to a layperson in Furr's position so as to be "objectively serious." Furr states that when he and Hall searched Johnny during the traffic stop, they found an empty bottle of Xanax that was prescribed to Johnny. The bottle indicated that it had been filled with sixty pills just two days before. [Doc. No. 19-10] at pg. 2. The record also indicates that Furr witnessed Johnny exhibiting obvious signs of intoxication during the traffic stop and while in route to the detention facility. These facts produce a genuine issue of whether Johnny's need for medical attention was objectively obvious to Furr.

Second, the record raises a genuine factual issue of whether Furr was subjectively

9

aware of Johnny's need for medical attention and deliberately disregarded it. Such awareness can be inferred from the aforementioned facts relating to the obviousness of Johnny's medical need as well as statements made by Furr himself. Furr states in his affidavit that: "Inside the jail [Johnny] appeared to be slurring slightly so I asked him if he had taken some of his meds earlier and he said 'yes.' I completed my paperwork and left the jail without further incident." *Id.* This statement indicates that Furr suspected Johnny was highly intoxicated on pills, confirmed his suspicion through Johnny's affirmative answer, and then did nothing in response. Furr did not tell King that Johnny was intoxicated or take any other responsive action. He simply left Johnny at the detention facility. Regardless of whether this evidence actually proves deliberate indifference, it does present a genuine issue of fact on the issue.

        b.      Clearly Established

There is also a genuine issue of fact as to whether Furr could have reasonably believed that his response to Johnny's medical need was unlawful. Furr found an empty bottle of Xanax on Johnny that had been filled with sixty pills just two days before. He witnessed Johnny passing out in the back of his patrol car and believed him to be highly intoxicated. He even indicated his worry by asking Johnny if he had taken medication to which Johnny replied in the affirmative. Furr responded to all this by simply dropping Johnny off at the county detention facility without informing the jail staff of the empty Xanax bottle or that Johnny was under the influence of prescription medication. These facts generate a genuine issue of fact as to whether a reasonable officer in Furr's position would have believed that

10

Furr's response was lawful. Because there is a genuine issue of fact as to both prongs of qualified immunity, summary judgment is denied as to the Section 1983 claims against Furr in his individual capacity.

### 3. Deputy James Hall

The record does not produce a genuine issue of fact as to whether Deputy James Hall is entitled to qualified immunity. Prior to Johnny's death, Hall's only involvement was at the traffic stop, where he searched and handcuffed Johnny. It is true that Hall, like Furr, witnessed Johnny show signs of intoxication during the traffic stop and helped recover the empty Xanax bottle. Hall, however, did not escort Johnny to the detention facility and has made no statements indicating he was ever subjectively aware that Johnny was highly intoxicated on prescription medication.

Hall's only other involvement in this matter was after Johnny's death. At that time, Hall was at the detention facility booking a DWI suspect and was alerted by King that Johnny appeared dead in his cell. [Doc. No. 19-11] at pg.2 (Affidavit and Report of James Hall). Hall entered Johnny's cell, checked his pulse, and performed a sternum rub with Sergeant Ed Bush. *Id.* Johnny had no pulse, appeared pale, and was "cool to touch," and jail staff was instructed to call an ambulance. *Id.* This course of conduct in no way indicates a deliberate disregard for Johnny's medical needs and occurred after Johnny was found dead. Accordingly, there is no genuine issue of material fact as to Hall's qualified immunity, and summary judgment is granted as to all claims against Hall.

### 4. Ed Bush and Tammy Pendergrass

11

There is also no genuine issue of material fact as to whether Ed Bush and Tammy Pendergrass are entitled to qualified immunity. Bush and Pendergrass were both at the county jail on the night of Johnny's death, but the undisputed record indicates they had no involvement with Johnny prior to his death. Tammy Pendergrass, who was in another room of the detention facility fingerprinting a female, first became involved after King entered Johnny's cell and told her he thought Johnny might be dead. At that point, Pendergrass left the fingerprinting room and advised King and Hall to check for a pulse. [Doc. No. 19-7] at pgs. 2-3 (Affidavit and Report of Tammy Pendergrass). Soon thereafter, Bush became involved as Hall rushed out of Johnny's cell and announced he thought Johnny was dead. Bush entered the cell and assisted Hall with rolling Johnny over and performing a sternum rub. [Doc. No. 19-9] at pg. 2 (Affidavit and Report of Ed Bush). When it was determined Johnny was not breathing, jail staff was instructed to call an ambulance.

These undisputed facts indicate that prior to Johnny's death, neither Bush nor Pendergrass were ever aware of Johnny's condition. As such, there is no genuine issue of material fact as to their qualified immunity, and summary judgment is granted as to all claims against them.

*5. Hugh Gentry, Ray Pennington, Mike Frost, Phil Mask, and Bruce Pennington*

Thompson has also named as defendants Hugh Gentry, jail administrator of the Saline County Detention Facility; Ray Pennington, successor jail administrator of the county detention facility; Mike Frost, a lieutenant with the Saline County Sheriff's Office; Phil Mask, the elected Saline County Sheriff at the time of Johnny's death; and Bruce Pennington,

the current Saline County Sheriff who succeeded Mask. The undisputed record indicates that none of these individuals were present or in any way involved in the events surrounding Johnny's death. *See* [Doc. Nos. 19-6, 19-8, 19-4, and 19-5] (relevant affidavits). There is no genuine issue of fact concerning their qualified immunity and summary judgment is granted as to all claims against them.

B.     Section 1983 Official Capacity Claims and Liability of Saline County

Thompson has also alleged constitutional violations against Saline County and against the defendant county employees in their official capacities, which is the functional equivalent of suing the county itself. *See Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) ("A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity."). Under Section 1983, a county or municipality cannot be liable for the conduct of its employees based on the doctrine of *respondeat superior*. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978). It can, however, be subject to liability if the "moving force" behind the alleged constitutional violation was an official county policy, a widespread practice or custom, or deliberately indifferent training of county employees. *Id.*; *City of Canton v. Harris*, 489 U.S. 378, 387-388 (1989).

Thompson alleges all three of these theories in support of her claim against Saline County. In her complaint, she alleges that there were two deaths at the Saline County Detention Facility in the months preceding Johnny's death. Plaintiff's Complaint [Doc. No. 1] ("Pl's Compl."), ¶ 65. While she attempts to support these allegations with newspaper

13

articles, these articles are not evidence for purposes of summary judgment. Similarly, Thompson alleges that certain statements were made at a county meeting indicating deliberate indifference by the county, but she produces no supporting evidence. *Id.* at ¶¶ 60-63. The only actual evidence cited by Thompson on the issue of municipal liability is an inspection report of the jail in September of 2009 that cited the jail for insufficient personnel. This alone does not produce a genuine issue of fact as to whether Saline County adopted an official policy of deliberate indifference toward the medical needs of detainees. This report also does not show that there was a pattern of widespread and pervasive unconstitutional conduct or deliberately indifferent training on the part of county officials. Because there is no genuine issue of material fact in dispute, summary judgment is granted as to the claims against Saline County.

C.      Arkansas Civil Rights Act of 1993

Thompson has also brought claims under the Arkansas Civil Rights Act of 1993. The same standard of deliberate difference used under the United States Constitution and Section 1983 applies to her claims under that Act. *Grayson v. Ross*, 483 F.3d 887 (2007). Accordingly, for the same reasons discussed above, summary judgment is granted as to the Arkansas Civil Right Act claims against Phil Mask, Bruce Pennington, Hugh Gentry, Ray Pennington, Tammy Pendergrass, Mike Frost, Ed Bush, James Hall, and Saline County. Summary judgment is denied as to the claims against Ulenzen King and Stephen Furr.

D.      Wrongful Death

Thompson also alleges wrongful death claims. Her theory appears to be that all

defendants liable for the alleged constitutional violations are also liable for wrongful death. Pl's Compl. ¶¶ 79-95. As discussed above, the only genuine issue of fact concerning liability of these defendants pertains to the constitutional claims against King and Furr. Summary judgment is therefore denied as to the wrongful death claims against those two defendants. It is granted as to the wrongful death claims against all other defendants.

## IV. CONCLUSION

For the reasons set forth above, summary judgment is granted as to all claims against defendants Phil Mask, Bruce Pennington, Hugh Gentry, Ray Pennington, Tammy Pendergrass, Mike Frost, Ed Bush, James Hall, and Saline County, Arkansas. Summary judgment is denied as to the claims against Ulenzen King and Stephen Furr.

IT IS SO ORDERED this 5th day of October 2012.

_____
UNITED STATES DISTRICT JUDGE