# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3450
_____

Elaine Thompson, Individually and as personal representative of the Estate of Johnny Dale Thompson, Jr., deceased

*Plaintiff - Appellee*

v.

Ulenzen C. King, Individually and as a Former Officer for the Saline County Detention Center; Stephen Furr, Individually and as a Deputy of the Saline County Sheriff's Department

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: April 9, 2013
Filed: September 20, 2013

_____

Before WOLLMAN, BEAM, and MURPHY, Circuit Judges.

_____

BEAM, Circuit Judge.

   In this interlocutory appeal, Ulenzen C. King and Stephen Furr (collectively, Appellants), law enforcement officials in Saline County, Arkansas, appeal from the district court's denial of qualified immunity on summary judgment. We affirm the

denial of qualified immunity to Officer King, reverse as to Officer Furr, and remand for further proceedings.

## I.     BACKGROUND

On December 18, 2008, Officer Stephen Furr, a deputy sheriff of Saline County, stopped a vehicle in which Johnny Dale Thompson, Jr., was a passenger. After discovering Johnny had an outstanding warrant, Officer Furr and another officer arrested Johnny and placed him in the patrol car. During this encounter, the officers found an empty Xanax bottle on Johnny. The bottle indicated that the Xanax was prescribed to Johnny and filled with sixty pills two days prior to his arrest. While en route to the Saline County Jail, Johnny slept but Officer Furr easily awakened him when they arrived at the jail. In an affidavit, Officer Furr explained, "Inside the jail [Johnny] appeared to be slurring slightly so I asked him if he had taken some of his meds earlier and he said 'yes.' I completed my paperwork and left the jail without further incident."

At the jail, Officer Furr left Johnny in the care of jailer Ulenzen King for booking. Officer King noted that Johnny appeared intoxicated, and Johnny asked for a chair to sit down. Johnny leaned forward in his chair but did not fall to the floor. During the booking process, Officer King had to slap the counter to awaken Johnny. Officer King asked Johnny several medical questions, including if he had ingested any medication and how much. Johnny informed Officer King that he suffered from seizures and had taken Dilantin but would not tell Officer King how many pills he had ingested. Due to Johnny's intoxication level, King wrote, "Too Intox to Sign" on Johnny's booking sheet. At approximately 7:42 P.M., Johnny was placed in a cell. At one point, another detainee observed Johnny's intoxicated condition and informed Officer King that Johnny needed help, but Officer King ignored the warning. At 9:09 P.M., Officer King and another officer entered Johnny's cell and discovered Johnny

cool to the touch, not breathing, and non-responsive. Johnny was taken to the hospital and pronounced dead at 9:30 P.M.

An autopsy report revealed that Johnny died from a multiple drug intoxication. Among the cocktail of drugs in Johnny's system, the medical examiner's report indicated that "[h]ydrocodone (a narcotic) was present in [Johnny's] blood at a level which could be considered elevated to toxic in and of itself." Johnny's blood also contained methadone, another narcotic, within a therapeutic range. Additionally, the report revealed that Johnny had alprozolam in his system within a therapeutic range. Although Johnny had informed Officer King that he had taken Dilantin, the toxicology report showed no Dilantin in Johnny's system. Ultimately, the medical examiner classified the death as an accident, hypothesizing that Johnny may have "mistakenly [taken] one of the medications by mistake, thinking it was Dilantin."

Johnny's mother, Elaine Thompson, commenced action against Saline County and several Saline County officers individually, alleging federal constitutional claims under 42 U.S.C. § 1983 and state law claims under the Arkansas Civil Rights Act and Arkansas' wrongful death law. The defendants moved for summary judgment, asserting qualified immunity. The district court concluded that Saline County and each individually named defendant, except for Officers Furr and King, were entitled to qualified immunity. Accordingly, the district court granted summary judgment and dismissed most of Thompson's claims but preserved the federal and state law claims against Officers Furr and King. Officers Furr and King now appeal, arguing that the district court erred in concluding they were not entitled to qualified immunity.

## II.   DISCUSSION

Pursuant to the collateral order doctrine, we have jurisdiction to review this interlocutory appeal only to the extent Appellants' qualified immunity arguments raise an issue of law. Robbins v. Becker, 715 F.3d 691, 693 (8th Cir. 2013). We review

-3-

de novo the denial of summary judgment on the basis of qualified immunity, viewing the evidence and drawing all reasonable inferences in the light most favorable to the non-moving party. Small v. McCrystal, 708 F.3d 997, 1003 (8th Cir. 2013).

When an official asserts qualified immunity in response to a § 1983 action, we conduct a two-pronged analysis: "(1) [whether] the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) [whether] the right was clearly established at the time of the deprivation." Jones v. McNeese, 675 F.3d 1158, 1161 (8th Cir. 2012) (alterations in original). As to prong one of this analysis, Thompson alleged that Appellants violated Johnny's substantive due process rights because they were deliberately indifferent to his serious medical needs.

A plaintiff claiming deliberate indifference must establish objective and subjective components. McRaven v. Sanders, 577 F.3d 974, 980 (8th Cir. 2009). "The objective component requires a plaintiff to demonstrate an objectively serious medical need. The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." Id. (quotations and citations omitted). On appeal, Appellants only challenged the district court's conclusions on the subjective component. Thus, we limit our review to that issue, solely addressing whether Officers Furr and King actually knew Johnny presented a serious medical need but deliberately disregarded it.

"In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." Vaughn v. Gray, 557 F.3d 904, 908 (8th Cir. 2009) (internal quotation omitted). This onerous standard requires a showing "more than negligence, more even than gross negligence," Popoalii v. Correctional Medical Services, 512 F.3d 488, 499 (8th Cir. 2008), but less than "purposefully causing or knowingly bringing about a substantial

-4-

risk of serious harm to the inmate," Schaub v. VonWald, 638 F.3d 905, 914-15 (8th Cir. 2011).

Circumstantial evidence may be used to establish the subjective mental state, and "a factfinder may determine that a defendant was actually aware of a serious medical need but deliberately disregarded it, from the very fact that the [medical need] was obvious." Vaughn, 557 F.3d at 908-09 (alteration in original) (internal quotation omitted). "But '[i]t is not enough merely to find that a reasonable person would have known [about the risk], or that [the officer] should have known' about the risk." Krout v. Goemmer, 583 F.3d 557, 567 (8th Cir. 2009) (alterations in original) (quoting Farmer v. Brennan, 511 U.S. 825, 843 n.8 (1994)). Even acting unreasonably in response to a known risk is not sufficient to prove deliberate indifference. Id. However, if a response to a known risk is obviously inadequate, this may lead to an inference that the officer "recognized the inappropriateness of his conduct." Id.

### A. Officer Furr

After evaluating the evidence in the light most favorable to Thompson, the district court concluded that genuine issues of material fact remained as to whether "Officer Furr was subjectively aware of Johnny's need for medical attention and deliberately disregarded it." To reach this conclusion, the district court emphasized that Officer Furr knew that Johnny had an empty Xanax bottle that was filled with sixty pills two days prior and exhibited obvious signs of intoxication. Moreover, the district court highlighted that Officer Furr had asked Johnny if he had taken some of his medication, and Johnny answered in the affirmative. Based on these facts, the district court reasoned, Officer Furr's awareness of the risk could be inferred, and it remained a question of fact whether Officer Furr's response–doing nothing, according to the district court–represented deliberate indifference. Officer Furr asserts that the subjective component of deliberate indifference is not present in this case. We agree.

-5-

The present case does not require us to enter uncharted territory, as <u>Grayson v. Ross</u>, 454 F.3d 802 (8th Cir. 2006), has already blazed the trail. In <u>Ross</u>, we confronted a situation where an arresting officer sought qualified immunity after a detainee he arrested died due to methamphetamine intoxication and other contributing conditions. <u>Id.</u> at 808. During the arrest, the detainee acted irrationally, informing the officer that his vehicle was going to explode, and became combative, which required the officer to subdue him with a service weapon. <u>Id.</u> at 806. Nevertheless, "once arrested, [the detainee] sat calmly in the back of the patrol car, followed directions, answered questions posed, and remained quiet and seated on a bench inside the jail." <u>Id.</u> at 809. Although the arresting officer likely knew the detainee was under the influence of methamphetamine, we found the subjective component not satisfied because "[the arresting officer] was unsure whether [the detainee] was hallucinating." <u>Id.</u>

Similar to our holding in <u>Ross</u>, the Fourth Circuit, too, has granted qualified immunity to an arresting officer in circumstances not unlike those Officer Furr faced. See <u>Grayson v. Peed</u>, 195 F.3d 692 (4th Cir. 1999). In <u>Peed</u>, an officer arrived at a scene involving a detainee "acting crazy." <u>Id.</u> at 694. After searching the detainee, the officer discovered a canister containing marijuana and a canister containing a substance believed to be PCP. <u>Id.</u> The officer placed the detainee under arrest and transported him to a detention facility. <u>Id.</u> While sitting in a cell at the detention facility, the detainee became unconscious and eventually died. <u>Id.</u> at 694-95. In a subsequent § 1983 action against the arresting officer, the mother of the decedent claimed that the officer's decision to transport the detainee to the detention facility instead of a hospital constituted deliberate indifference. <u>Id.</u> at 695. The Fourth Circuit disagreed, concluding that no objective evidence informed the officer that the detainee had a serious medical need. <u>Id.</u> As the court explained, "at the time of their encounter, [the detainee] exhibited to [the arresting officer] no visible external injuries. He did not have trouble breathing. He was not bleeding, was not vomiting

or choking, and was not having a seizure. Furthermore, [the detainee] was conscious, at least somewhat responsive, and able to answer questions." Id.

We see very little difference in the encounter between Officer Furr and Johnny, and the encounters illustrated in Ross and Peed. Here, Johnny presented no external injuries and nothing indicates his breathing was abnormal. Johnny was conscious during the initial encounter, answered Officer Furr's questions, and followed instructions. Although Johnny exhibited signs of intoxication by falling asleep in the patrol car and slightly slurring his words, Officer Furr easily awakened him and "[h]is symptoms hardly distinguish him from the multitude of drug and alcohol abusers the police deal with everyday." Peed,195 F.3d at 696. Our precedent does not permit the presumption of actual knowledge based upon such minor symptoms of intoxication. See, e.g., Ross, 454 F.3d at 809 (finding no subjective knowledge where officer knew detainee was likely under influence of methamphetamine but was unsure if detainee was hallucinating); cf., e.g., McRaven, 577 F.3d at 981 (denying qualified immunity where "officers knew the cocktail of drugs taken by [detainee], and the drug intoxication evaluation showed a severely intoxicated detainee"). And, as Ross and Peed make clear, an officer does not lose the protections of qualified immunity merely because he does not react to all symptoms that accompany intoxication. Therefore, in light of Johnny's relatively innocuous behavior, we do not make much of the fact that Officer Furr discovered an empty Xanax pill bottle coupled with Johnny's indication that he had taken "a little" of his medication. See Ross, 454 F.3d at 810 (finding no deliberate indifference where detainee's behavior "did not suggest a high degree of intoxication"); Peed, 195 F.3d at 696 (finding no deliberate indifference where detainee "was found in possession of drugs while acting irrationally and slurring his speech").

Accordingly, within the confines of the circumstances Officer Furr encountered, we conclude he did not have subjective knowledge that Johnny required

-7-

medical attention. It follows from this conclusion that Officer Furr was not deliberately indifferent to Johnny's medical needs and is, therefore, entitled to qualified immunity.[1]

### B. Officer King

The district court determined that Officer King was not entitled to qualified immunity because the evidence revealed Officer King recognized that Johnny was intoxicated on prescription medication but failed to respond to Johnny's medical needs. Officer King asserts that the subjective component of deliberate indifference is not satisfied because Officer King did not know of Johnny's serious medical need. Like Officer Furr, Officer King believes Ross supports a grant of qualified immunity in his case. We disagree.

Although we have concluded that Ross entitles Officer Furr to qualified immunity, Ross does not compel the same conclusion for Officer King. Indeed, in Ross, the booking officer dealt with a detainee who was a "calm, non-combative person sitting on a bench answering questions." 454 F.3d at 810. This description lies in stark contrast to Johnny, who passed out in the booking area, nearly fell out of his seat, was unable to sign his name, and, according to plaintiff's version of the facts, "couldn't even answer questions that Officer King was asking him." In sum, Johnny presented a noticeably more intoxicated condition during his encounter with Officer King than the detainee in Ross. Therefore, distinguishing Ross, we turn to the specific circumstances Officer King confronted.

---

[1] In addition to the § 1983 claim against Officer Furr, Thompson asserted claims under Arkansas state law. None of the state law claims are at issue in this appeal, and we leave for the district court to address those remaining claims against Officer Furr in the first instance on remand.

-8-

The district court properly highlighted the relevant facts: Officer King had to slam his hand on the counter to keep Johnny from passing out and was well-aware that Johnny exhibited a heightened intoxicated state, even writing "Too Intox To Sign" on Johnny's booking sheet.[2] Further, in the incident report, Officer King admitted that he believed Johnny's intoxication stemmed from prescription seizure medication but could not confirm how much medication Johnny ingested. Not only did Johnny have noticeable symptoms of severe intoxication while Officer King booked him, a fellow detainee, Bobby Harrison, also later warned Officer King that Johnny needed help after Johnny's body slid down the window of his jail cell.[3] According to Harrison, anyone witnessing Johnny's condition at the jail would have recognized he needed medical attention. Officer King did nothing in response. When these circumstances are viewed in combination, we think a reasonable jury could find

---

[2]According to Officer King, because Johnny was able to provide information that allowed Officer King to complete the medical portion of the booking sheet–including an emergency contact's address–he could not have known Johnny posed a serious medical risk. Although Johnny's ability to answer questions is certainly a factor to consider in the analysis, see Ross, 454 F.3d at 809, we must look at a totality of the circumstances, not a single fact.

[3]At oral argument, Officer King's counsel attempted to explain away Harrison's affidavit, urging this court to put little stock in it because other facts in the record contradicted it. Of course, on summary judgment, when the parties offer conflicting facts, we adopt the nonmovant's version of the facts unless that version is "blatantly contradicted by the record, so that no reasonable jury could believe it." Scott v. Harris, 550 U.S. 372, 380 (2007). Harrison's affidavit is not "blatantly contradicted by the record" so as to render it unbelievable. Cf., e.g., id. at 379-81 (refusing to adopt plaintiff's version of facts when contradicted by video evidence); Wallingford v. Olson, 592 F.3d 888, 892-93 (8th Cir. 2010) (same). Accordingly, we continue to view the evidence in the light most favorable to Thompson–including Harrison's affidavit.

Officer King had subjective knowledge of a serious medical need and deliberately disregarded that need.

Because we have concluded that a jury question exists as to whether Officer King violated Johnny's constitutional rights, we now move to the second prong of the qualified immunity analysis: "[whether] the right was clearly established at the time of the deprivation." Jones, 675 F.3d at 1161 (alteration in original). "In determining whether a right is clearly established, we ask whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[4] El-Ghazzawy v. Berthiaume, 636 F.3d 452, 459 (8th Cir. 2011) (quotation omitted). This question requires us to examine precedent to determine if the law "provided fair warning the officer's conduct was unconstitutional." Id. (internal quotation omitted).

The Supreme Court has declared that it is unconstitutional for prison officials to act deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). And, we have recognized that a reasonable officer would know that it is unlawful to delay medical treatment for a detainee exhibiting obvious signs of medical distress. Gordon v. Frank, 454 F.3d 858, 863 (8th Cir. 2006). Given this precedent, a reasonable officer would have known that a

---

[4]Under the second prong of the qualified immunity analysis, the district court seems to have concluded that a jury question existed as to whether a reasonable officer in Officer King's position would have believed his conduct was lawful. Although a jury is to decide predicate facts, the ultimate question of qualified immunity is one for the court. Littrell v. Franklin, 388 F.3d 578, 584-85 (8th Cir. 2004). That is, the court must determine objective legal reasonableness and "whether the facts alleged . . . support a claim of violation of clearly established law." Id. at 585 (alteration in original) (quotation omitted). Thus, we make this legal determination based upon summary judgment facts viewed in the light most favorable to Thompson. See Scott, 550 U.S. at 381 n.8.

-10-

constitutional violation occurs by deliberately disregarding Johnny's serious medical needs in the circumstances Officer King confronted. Therefore, because the constitutional right was clearly established, the district court properly denied Officer King qualified immunity.

### III. CONCLUSION

For the forgoing reasons, we reverse the district court's qualified immunity determination as to Officer Furr, affirm the district court's determination as to Officer King, and remand for further proceedings.

_____

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

September 20, 2013

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

RE: 12-3450  Elaine Thompson v. Ulenzen King, et al

Dear Sirs:

A published opinion was filed today in the above case.

Counsel who presented argument on behalf of the appellant was George D. Ellis, of Benton, AR.

Counsel who presented argument on behalf of the appellee was Guy Randolph Satterfield, of Little Rock, AR.

The judge who heard the case in the district court was Honorable Brian S. Miller. The judgment of the district court was entered on October 5, 2012.

If you have any questions concerning this case, please call this office.

Michael E. Gans
Clerk of Court

SRD

Enclosure(s)

cc: Lois Law
    MO Lawyers Weekly

District Court/Agency Case Number(s):  4:11-cv-00379-BSM

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
 *Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

September 20, 2013

Mr. George D. Ellis
ELLIS LAW FIRM
126 N. Main Street
P.O. Box 2307
Benton, AR  72018-2307

      RE:  12-3450  Elaine Thompson v. Ulenzen King, et al

Dear Counsel:

      The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00a.m. today. Please hold the opinion in confidence until that time.

      Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

                                         Michael E. Gans
                                         Clerk of Court

SRD

Enclosure(s)

cc:    Mr. Jim McCormack
        Mr. Guy Randolph Satterfield

      District Court/Agency Case Number(s):   4:11-cv-00379-BSM



12-3450 Elaine Thompson v. Ulenzen King, et al "Signed Opinion Filed" (4:11-cv-00379-BSM)
8cc-cmecf-nda
to:
09/20/2013 08:07 AM
Hide Details
From: 8cc-cmecf-nda@ck8.uscourts.gov
To:

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

## Eighth Circuit Court of Appeals

**Notice of Docket Activity**

The following transaction was filed on 09/20/2013

**Case Name:**     Elaine Thompson v. Ulenzen King, et al
**Case Number:**  12-3450
**Document(s):**  Document(s)

**Docket Text:**
OPINION FILED - THE COURT: Roger L. Wollman, C. Arlen Beam and Diana E. Murphy AUTHORING JUDGE:C. Arlen Beam (PUBLISHED) [4077643] [12-3450] (Susan Duenow)

**Notice will be electronically mailed to:**

Mr. George D. Ellis: gellisinbenton@swbell.net, rbmalone@hotmail.com
Mr. Jim McCormack, Clerk of Court: ared_appeals@ared.uscourts.gov
Mr. Guy Randolph Satterfield: satterfieldlaw@comcast.net
Lois Law: FED08@loislaw.com
MO Lawyers Weekly: stephanie.maniscalco@molawyersmedia.com
West Publishing: us08@westdcs.west.thomson.com


The following document(s) are associated with this transaction:
**Document Description:** opinion
**Original Filename:** 123450P.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=09/20/2013] [FileNumber=4077643-0]
[67655018d5e533b4a20c8ddc90d539035fdd0fc88b2b704437be17a78081a6c85986b2c8b4d7fd99a0f4d2de3b544494a603346832b141972daa29b8daca0058]]

**Document Description:** Letter To Publishing
**Original Filename:** /opt/ACECF/live/forms/sduenow_123450_4077643_LettersToPublishing_284.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=09/20/2013] [FileNumber=4077643-1]
[95a0ae4b26f0bbe5bff6bb4ef6eb46b0a2b7c240695d9548fb485c43807535baccda3e34e431d195e5ce60f194c04dfe6581874b1ab9caf59c16a354f4c7f271]]
**Recipients:**

- Lois Law
- MO Lawyers Weekly
- West Publishing

**Document Description:** Counsel Opinion Letter
**Original Filename:** /opt/ACECF/live/forms/sduenow_123450_4077643_CounselOpinionLetters_285.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=09/20/2013] [FileNumber=4077643-2]
[46c7be2ecdc223ebbeb2a9bcb9e62696866ae7433cb8f2f1e21a389ab30392f05de4a1f0a1753ea85ed87e8d27ef6d19c52437bd4a8c9bdf347561692a823ef8]]
**Recipients:**

- Mr. George D. Ellis
- Mr. Jim McCormack, Clerk of Court
- Mr. Guy Randolph Satterfield

The following information is for the use of court personnel:


**DOCKET ENTRY ID:** 4077643
**RELIEF(S) DOCKETED:**
  for publication
**DOCKET PART(S) ADDED:** 4934471, 4934472, 4934473